Mr. Justice Field
delivered the opinion of the court;
Upon the facts found by the Court of Claims, we are of opinion that the contract entered into on behalf of the United States *221 with Major Sibley, by which the Government was authorized to make and procure as many of the Sibley tents as it might require, by paying the sum of five dollars for each tent, was a valid contract, and not within the prohibitions of the Army Eegulation, number 1002. That regulation does not apply to contracts on behalf of the United States which require for their validity the approval of the Secretary of War. Though contracts of that character are usually negotiated by subordinate officers or agents of the Government, they are in fact and in law the acts of the Secretary, whose sanction is essential to bind the United States. The Secretary, though the head of the War Department, is not in the military service in the sense of the regulation, but, on the contrary, is a civil officer with civil duties to perform, as much so as the head of any other of the Executive Departments.
It would be carrying the regulation to an absurd extent to hold it was intended to preclude the War Department from availing itself, by purchase or any other contract, of any property which an officer in the military service might acquire, if its possession or use were deemed important to the Government. If an officer in the military service, not specially employed to make experiments with a view to suggest improvements, devises a new and valuable improvement in arms, tents, or any other kind of war material, he is entitled to the benefit of it, and to letters-patentfor the improvement from the United States, equally with any other citizen not engaged in such service ; and the Government cannot, after the patent is issued, make use of the improvement any more than a private individual, without license of the inventor or making compensation to him.
In the present case there is no question of the right of Sibley to the improved conical tent. He received a patent for the improvement in April, 1856, and by the contract with him, the United States recognized his right to it, and to compensation for its use.
The contract was nothing more, in fact, than a license from him to the Government to manufacture or procure the tent, and use it, upon payment of a stipulated sum. By its terms the license extended until the 1st of January, 1859, and longer unless the United States were notified to the contrary. The power of determining this license thus remained with the *222 patentee after that period, but the United States could also at any time have determined their liability by ceasing to make the tents. It does not appear that either party ever desired the ■termination of the license. Neither Sibley, nor Burns, who had become, as hereafter stated, equally interested with Sibley in the contract, ever expressed any intention to withdraw the license; and the United States continued to make and use the tents until the whole number were obtained for which the present claim is asserted. The order of the Secretary in December, 1861, declaring that no further payments should be made to Burns on account of the royalty on the tent, was not intended, in our judgment, either as a repudiation of the liability of the United States to him for the tents previously procured, .amounting to over thirty-eight thousand, or of their liability to him for any tents that might be subsequently made, but only to leave the rights of Burns, connected as they were with a patent issued to one who had resigned his commission in the national Army, and entered the confederate service, to be determined by the proper judicial tribunals. If the Secretary had intended to terminate the contract, something more would have been required on his part, while continuing to manufacture and nse the tents, than a mere direction to withhold' the payments stipulated for such manufacture and use.
Burns, as we have said, had become equally interested with •Sibley in the contract with the United States. In April, 1858, Sibley had executed to him an assignment of “the one-half interest in. all the benefits and net profits arising from and belonging to the invention,” from and after the 22d of February, 1856, a period anterior to the issue of the patent. Whether this assignment be held to have transferred a legal title to one-half of the patent itself is not, in our judgment, important. ■ It passed a half interest in the contracts of Sibley with the Government, and the right to a moiety of the royalty stipulated by that contract.
The War Department recognized this half interest of Burns, •and until the order of the Secretary in December, 1861, paid a •moiety of the royalty to him. It thus severed his claim under ■contract from that of Sibley. But independent of this fact the rights of Burns in the contract and the compensation stipulated could not be forfeited nor impaired by the disloyalty of his associate. He was true in his allegiance to the Govern *223 ment, and served in the Army of the Union. His claim could, therefore, be presented and considered in the Court of Claims by the act of March 3, 1863. His associate, Sibley, is at the same time barred by that act of any action there, either joint or several, by reason of his disloyalty. The act does thus, in fact, sever their claims, allowing the claim of one to be prosecuted and barring that of the other. The technical rule of pleading in an action in a common law court, by which a contract with two must be prosecuted in their joint names, if both are living, has no application to a case thus situated. And the Court of Claims, in deciding upon the rights of claimants, is not bound by any special rules of pleading.
We see no error in the ruling of that court, and therefore its judgment is affirmed.