Davis, J.,
delivered the opinion of tlie court:
The claimant seeks in this action, upon an implied contract (McKeever v. The United States, 14 C. Cls. R., 196; 18 id., 757; Burns v. The United States, 12 Wall., 246), to recover compensation for the manufacture and use by the United States Army of cartridges alleged to be an infringement of his patent issued in 1879.
As it is admitted that the government cartridges were manufactured and used prior to the claimant’s application for the patent in question, it would naturally be inferred either that the invention was not novel or that the government cartridge does not infringe the rights secured by the letters patent. The claimant seeks to avoid this inference by showing that, although his rights first became enforceable upon the issue of the patent, he in fact is the first inventor, and he puts in evidence a number of applications made by him prior to 1879, as tending to establish this.
In an action for infringement, where the question of priority is raised, the claimant may go into such history of his efforts and achievements in the art as tend to show that he was in fact the first in ventor of somethin g after wards patented by him; but as the letters patent form the basis of the action, an exam.ination of the claimant’s moral claims to priority is useless unless he has protected his rights in the manner prescribed by law.
The claimant conducted his own cause before this court, and both in his brief and in argument made broad claims as to his inventions in metallic cartridges, showing that for over forty years he labored diligently for the improvement of fire-arms and ammunition, and that he early foresaw the necessity of substituting for the muzzle-loader, with loose ammunition, a safer and more efficient arm for warfare, to be breech-loading with cartridges; this, however, is beside the issue, as his legal rights are shown, defined, and limited by his patents only.
The distinctive features of the patent of 1879 are set forth by the claimant as follows: “ The fulminate [or priming], although the superior explosive force, is contracted into a dimin *366 ished or small central chamber and fills it. The flange and head of the metallic case are solid, all in one piece. This chamber . at its sides or outer extreme edges communicates directly and exclusively with the powder charge,” so that the fulminate will diffuse its explosive force j “to effect this the central anvil-piece has no central aperture, is as wide as the fulminate-filled chamber, and the perforations are at the extreme outer edges of this fulminate,” for the purpose of diffusing the fire and retaining the central anvil. Claimed as new is “ the combination of a circular base inclosing a central chamber of fulminate and an anvil over the fulminate, provided with two or more openings, whose inner edges nearly coincide with the edges of the central chamber of fulminate.”
Stated in another way, the distinguishing feature of the combination is a disk within a metallic cartridge, having an aperture in the center to receive the priming; over that a metallic disk having two vents drilled through it, by which the flame from the priming may reach the black powder placed, immediately over this second disk, these vents to be so arranged that their inner edges shall nearly coincide with the wall of the fulminate chamber, that is, so that a portion only of their area shall open into that chamber and be free for the passage of the flame. This arrangement of the vents seems to obstruct the free escape of the flame and gas generated by the priming. The claimant, however, evidently deemed this position of the apertures material, possibly because it gives a larger diameter to the anvil.
The patent of 1879 is, therefore, for a combination made up of the circular base containing the fulminate, the anvil over it, with the apertures or vents placed as shown, and the position of these vents is material to the combination as described and claimed.
Turning now to the claimant’s prior applications, through which he seeks to prove an early invention of the combination patented in 1879, we can lay aside, as on their face irrelevant, the applications and patent of 1872, as well as the caveat of 1842, and need to consider only the application of 1865. The invention described in this application consisted of the combination of a perforated anvil protruding upward into the shell,, the edges held by insertion into the hollow flange or rim surrounding the base of the cartridge, with the closed end of the *367 Cartridge made thinner opposite the priming, which was contained in the chamber formed by the protrusion of the anvil upwards into the shell and the area cut out of the base. In his specification the inventor stated that he preferred a central vent through the anvil, but suggested the possibility of using two or more vents, without, however, defining their position. This suggestion he abandoned upon appeal in the Patent Office, and relied upon the single central vent, laying stress upon the. combination of the thinned base, the construction of the anvil-plate, and the central vent, all acting together to produce a safe and quick explosion with a small amount of priming and large, ventage. The claim of 1865 does not aid the patent of 1879, as it lacks the latter’s distinguishing characteristics. In 1865 the claimant laid stress upon the combination of the thinned "base with the anvil having a central vent, saying, “ The central issue of the fire through the gunpowder ignites it uniformly and most quickly,” while in 1878 he provided two apertures, as widely separated as possible, “ so [to use the claimant’s words] that the explosive force of the fulminate is not allowed to expand, * * * but is compelled to diffuse its explosive force not in a central stream, but in a diffused body. To effect this the central anvil-piece has no central aperture, is as wide as the fulminate-filled chamber, and the perforations are at the extreme outer sides of this fulminate * * * to -diffuse the fire * * ■ * and to have an unperforated anvil.”
In 1865, therefore, the claimant aimed at quick ignition -through concentrated fire, while in 1878 he sought the same result through diffusion of the flame. There are other differences between the application of 1865 and that of 1878, on which the patent in question was issued, which it is not necessary now to consider more fully, but which support our conclusion that the specification of 1865 does not cover the invention patented in 1874.
The government cartridges alleged to infringe the claimant’s rights are of two kinds, called the “ reloading cartridge ” and the “cup-anvil cartridge.” The “reloading cartridge” is a ■solid flange metallic cartridge with a chamber indented from without into the center of the closed end or base to receive the primer; at the top of this chamber is a single aperture to convey the flame from the fulminate to the black-powder chamber immediately above. In this cartridge there are not two aper *368 tures, there is not a central or any anvil, there is no central fulminate chamber; in fact, it is merely a metallic shell, intended to hold powder and ball only, with a chamber in its base for the reception of a primer containing anvil and fulminate. The primer is entirely distinct and separate from the cartridge, nor is it necessary to use ány particular kind of primer; the one complained of in this case consists of a circular metallic cap, into which is put the fulminate, and above it is fastened a metallic disk acting as an anvil; at either extremity of a diameter of this anvil is cut a notch or hole, which shows its entire area into the priming chamber. When this primer is forced into the chamber in the base of the “ reloading cartridge,” the two vents come against the top of the chamber and are closed by it; therefore, a groove is made along the diameter of the top of the disk, extending from one of the notches or vents to the other, to allow the passage of the flame. When this primer is in its place in the cartridge, and the fulminate is exploded, the flame rushes through the notches or vents, and meeting the solid base of the shell, follows the groove to the siugleeentral aperture, through which itr eaches the black powder in a single stream. Neither the combination of this shell and primer nor the combination distinguishing either the shell or primer singly is covered by the claimant’s patent.
The “ cup-anvil ” cartridge is at first glance much more like the claimant’s cartridge than the “ reloader.” It is a metallic solid flange shell, into which is placed a metallic cup, resting on the closed end or base of the cartridge. The mouth of this cup faces upwards towards the black-powder chamber or open end of the shell, and it is firmly held in place by a crimp in the circumference of the shell just above its upper edge. The bottom of this cup projects upwards from the circumference towards the center, and in the chamber thus formed between the bottom of the cup and the closed end or base of the cartridge is placed the fulminate. At either end of a diameter of the cup is drilled a hole, whose entire area opens in upon the priming and is free to receive the flame; the inner edges of these vents do not, therefore, “ nearly coincide” with the wall of the chamber; on the contrary, it is their outer edges which are nearest to it; and thus an important element of the claimant’s combination is absent. (Vance v. Campbell, 1 Black, 427; Case v. *369 Brown, 2 Wallace, 325 and 327; Schumacher v. Cornell, 96 U. S. R., 554.)
Prior to 1864 the “ rim-fire” metallic cartridge was used in the Army, but in that year experiments were begun for the perfection of the center-fire cartridge, and among other models the government officers manufactured and fired a cartridge of which the following were the distinctive features : The fulminate was inclosed in a central chamber protruding outward from the base of the shell; over this was a metal disk, held in place by the walls of the shell; at either extremity of a diameter of this disk was a hole, exposing its entire area for the free passage to the black powder of the flame from the fulminate. The exterior bulb or chamber was abandoned, but the other distinguishing features were in effect retained and improved, until they developed, in 1868, the cup-anvil service cartridge.
This cartridge of 1864 shows a central fulminate chamber with a disk above it, of which the center is the anvil, and through this disk are drilled two vents. Another cartridge made by the government about the spring of 1865 shows the same combination, except that the priming chamber is formed by a circular depression in the base of the cartridge, instead of an exterior protrusion or bulb. If, then, the use of two disks is not material to the claimant’s combination, and if the position of the vents is likewise not material, there remains of his patent of 1879 only a chamber of fulminate in the center of the base of the cartridge, with an anvil over it, having two or more openings. Cartridges covered by this description were manufactured by the government in 1864, and have been ever since. But there is another and material distinction between claimant’s cartridge, the government cartridges of 1864 and 1865, and the service “ cup-anvil” cartridge found in the substitution of a cup for á disk or for two disks.
Theoretically a disk has area without thickness; practically it has very little thickness, and is apt to be misplaced or turned in the shell or to be loosened by the blow from the striker; on the other hand, a cup, from its form, has greater rigidity, its wall prevents it from turning when inserted, and it can be better held, because the crimp is made at a thinner part of the walls of the shell, while the disk must be secured by a crimp close to the base, where the walls are thickest. The cup also, being practically the equivalent of a hollow cylinder, occupies *370 less powder space for equal depths of cup and thickness of disk.
Upon our construction of the patent in issue the government cartridges do not infringe the claimant’s; but if we are in error as to this, still the claimant cannot recover, as the essential characteristics of his invention now found in the government cartridge were developed by officers of the Army in 1864. That is, if the relative position of the vents and the wall of the fulminate chamber is a material part of the claimant’s patent, the government has not infringed, this feature not appearing in its cartridges; but if this position is not material, still the claimant cannot recover, as the other characteristics of his invention found in the cartridge now used by the defendants were introduced by them prior to the issue of the patent or the filing of the application for it, and even prior to the application of 1865.
In this view of the case it is unnecessary to consider other points urged by the defense.
It is thejudgment of the court that the petition be dismissed.