BROOKFIELD et al. v. ELMER GLASSWORKS.

(Circuit Court, D. New Jersey.   September 16, 1904.)

**1. PATENTS—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.**
   The complainant in a suit for infringement of a patent is not entitled to a preliminary injunction where, upon the showing made, there is a substantial doubt of infringement.

**2. SAME.**
   The fact that a defendant shown to have used an infringing device in the past disclaims any intention of using it in the future does not affect complainant's right to an injunction.

**3. SAME—INFRINGEMENT—PRESS FOR MAKING INSULATORS.**
   The Kribs patent, No. 542,565, for improvements in presses for making screw-insulators, claims 2 and 3, which cover a combination of elements in a press, construed in a suit for infringement, and *held* nôt so clearly infringed by the machine of the Duffield patent, No. 723,589, as to entitle complainant to a preliminary injunction.

In Equity.   Suit for infringement of letters patent No. 542,565, for improvements in presses for making screw-insulators, granted to Seraphin Kribs July 9, 1895.   On motion for preliminary injunction.

Kenyon & Kenyon and George W. Mills, Jr., for complainants.
Walter H. Bacon and Thomas Mackenzie, for defendant.

LANNING, District Judge.   This is an application for a preliminary injunction to restrain the defendant from infringing patent No. 542,565, issued July 9, 1895, to Seraphin Kribs, and by him assigned to William Brookfield, now deceased, of whose will the complainants are executors.   The title of the complainants to the patent in question is not disputed, and its validity was established by a decree of this court rendered in the case of Brookfield v. Novelty Glass Manufacturing Company (C. C.) 124 Fed. 551.

The patent is for certain improvements in a press for making glass screw-insulators for telegraph lines and the like.   In the letters patent, 10 claims are set forth.   The second and third claims only are involved in this litigation.   They are as follows:

"(2) An actuating-rod provided with a detachable screw-plunger, combined with a rotary spindle adapted to engage the screw-plunger, a mold, and a movable support for the mold, substantially as described. (3) An actuating-rod provided with a detachable screw-plunger, combined with a rotary spindle adapted to engage the screw-plunger, a mold, a movable support for the mold, and a lock for holding the support with the mold in operative position relatively to the actuating-rod and spindle, substantially as described."

It will be observed that these claims relate to combinations of different elements, and not to the elements themselves.   In Schumacher v. Cornell, 96 U. S. 549, 24 L. Ed. 676, it was said:

"A combination is always an entirety.   In such cases the patentee cannot abandon a part and claim the rest, nor can he be permitted to prove that a part is useless, and therefore immaterial.   He must stand by his claim as he has made it.   If more or less than the whole of his ingredients are used by another, such party is not liable as an infringer, because he has not used the

¶ 2. See Patents, vol. 38, Cent. Dig. § 492.

invention or discovery patented. With the change of the elements, the identity of the product disappears."

And in Prouty v. Draper, 16 Pet. 336, 10 L. Ed. 985, which involved the question of an infringement of a patent issued for a combination of certain elements in the construction of a plow, the court said:

"None of the parts referred to are new, and none are claimed as new; nor is any portion of the combination, less than the whole, claimed as new, or stated to produce any given result. The end in view is proposed to be accomplished by the union of all, arranged and combined together in the manner described. And this combination, composed of all the parts mentioned in the specifications, and arranged with reference to each other and to other parts of the plow, in the manner therein described, is stated to be the improvement, and is the thing patented. The use of any two of these parts only (there being three parts described in the letters patent), or of two combined with a third, which is substantially different in form, or in the manner of its arrangement and connection with the others, is therefore not the thing patented. It is not the same combination if it substantially differs from it in any of its parts."

And in Water Meter Co v. Desper, 101 U. S. 332, 25 L. Ed. 1024, it was said:

"It is a well-known doctrine of patent law that the claim of a combination is not infringed if any of the material parts of the combination are omitted. It is equally well known that if any one of the parts is only formally omitted, and is supplied by a mechanical equivalent performing the same office and producing the same result, the patent is infringed."

With these rules before us, it becomes necessary to analyze the claims in the complainants' patent alleged to be infringed, and also the machine which is being operated by the defendant. In the second claim of the complainants' patent the elements are (1) an actuating-rod, and (2) a detachable screw-plunger with which the actuating-rod is provided, with which two elements are combined (3) a rotary spindle adapted to engage the screw-plunger, (4) a mold, and (5) a movable support for the mold.

The proofs show that the defendant's machine has (1) an actuating-rod, and (2) a screw-plunger, with which two elements are combined (3) a mold, and (4) a movable support for the mold. The defendant insists that this machine is substantially different from that described in the complainants' patent in these respects: (1) That in the complainants' patent the screw-plunger is detachable from the actuating-rod, the screw-plunger during a part of the operative work of the machine being attached to the actuating-rod, and during another part being detached from it, while in the defendant's machine the screw-plunger is not at any time attached to the actuating-rod, and therefore is not detachable from it; and (2) that in the complainants' patent the rotary spindle is adapted to engage (that is, to be attached to) the screw-plunger, while in the defendant's machine the work performed by the complainants' rotary spindle is done by a simpler device, namely, a handle or crank permanently attached to the upper end of the plunger and operated by hand. In other words, the defendant, while admitting that its machine has in it the same elements as 1, 4, and 5 mentioned in the complainants' patent, contends that the second element described

in that patent is not at all the same as, and is not the mechanical equivalent of, the second element in the defendant's machine, and that neither the third element, nor any mechanical equivalent thereof, described in the complainants' patent, is contained in the defendant's machine.

The screw-plunger used in the defendant's machine, as well as that described in the complainants' patent, is an old element, and not patentable. It is a threaded piece of iron or steel, which, in the process of making glass insulators, is pressed down into a mass of fused glass held in a mold and which, after it is withdrawn from the insulator, leaves the interior surface of the insulator with a perfect spiral thread. By the machine described in the patent, the plunger, after being attached to the lower end of the perpendicular actuating-rod, is by means of a lever thrust down into the fused glass. The plunger is then detached from the actuating-rod, and by means of the same lever the actuating-rod is raised, leaving the plunger in the fused glass; and the mold, with its contents of glass and the plunger in it, are carried, by the movement of the rotary table on which the mold is fixed, from the position directly under the actuating-rod, that another plunger may be attached to the actuating-rod, and another mold, with its contents of fused glass, may be brought under the actuating-rod and the plunger attached thereto, for a repetition of the process above described. As the rotary table containing these molds is revolved, the molds, one by one, reach a point where the rotary spindle may be attached to the plungers, and where by turning a wheel the rotary spindle withdraws the plungers from the partially cooled insulators by a spiral upward movement of the plungers, in such manner as to leave on the inside of the insulators perfect spiral threads. The rotary spindle is not stationary, but may be adjusted to take the plungers from the insulators at various points on the rotary table.

In the defendant's machine, each mold is attached to the rotary table, as in the complainants' machine; but, unlike the complainants' machine, each of the defendant's molds is provided with a plunger placed in a vertical position immediately over the center of the mold, the upper end of the plunger having permanently attached thereto a handle or crank. As the mold, filled with fused glass, is brought by the rotation of the table to a point directly beneath the actuating-rod, the plunger, which up to this point in the operation is held above the mold by a device made for that purpose, is pressed down into the fused glass by operating the lever connected with the actuating-rod; the lower end of the actuating rod coming down to and pressing upon the upper end of the plunger at the point where the crank or handle is connected with the plunger. In each of the two kinds of machines the plunger is pressed into the fused glass by means of the actuating-rod, but, in the case of the complainants' machine, before the actuating-rod is operated a plunger has been physically attached to it, while in the case of the defendant's machine nothing is attached to the actuating-rod, the plunger being fixed in its position above the mold, and attached to the mold, and not to the actuating-rod. After the

mold in the defendant's machine has been removed from its position under the actuating-rod, the handle or crank attached to the upper end of the plunger is turned by hand, and the plunger removed from the partially cooled glass, so as to leave on the inner surface of the glass a perfect spiral thread. To remove the plunger, it is not attached to any other part of the machine, but, as above stated, is removed by a simple operation of the crank or handle by hand, and by no intervening mechanical device whatever.

The complainants, to be entitled to a preliminary injunction, must show that their title to such relief is free from substantial doubt. I cannot say, upon the presentation of this case on ex parte affidavits, that the plunger used by the defendants is clearly such a detachable screw-plunger as that described in the complainants' patent. Neither can I say that the defendant's device for removing the plunger from the insulator is the mechanical equivalent of the device for that purpose described in the complainants' patent. In the complainants' machine the plunger is removed from an insulator after having been connected with a rotary spindle. In the defendant's machine, the device which serves the purpose of the complainants' rotary spindle is merely a crank or handle attached permanently to the upper end of the plunger. Furthermore, the defendant's machine is patented. Letters patent thereon (No. 723,589) were issued to Thomas C. Duffield on March 24, 1903.

In view of all the facts laid before me by the ex parte affidavits taken in this cause, I think the complainants have not established a clear case of right to a preliminary injunction. There is a substantial doubt as to whether the defendant's machine infringes the complainants' patent, and that doubt defeats the complainants' right to a preliminary injunction as against the use of the machine described in the Duffield patent, above mentioned. Morss v. Knapp (C. C.) 39 Fed. 608; Russell v. Hyde (C. C.) 39 Fed. 614.

On one occasion, however, it appears that the defendant used what is spoken of in the proofs as a modified form of the Duffield patent. This latter machine has a detachable screw-plunger, which is pressed into the fused glass and removed therefrom in a manner that I deem substantially like that in the complainants' machine. The use of this modified press, I am satisfied, was an infringement upon the complainants' patent. The defendant says the only use it ever made of the modified press was within a period of two or three days while plans of one of its patented Duffield presses were being made by the complainants' draftsman, who was admitted for that purpose by the defendant into its factory. This was in April, 1904. This fact, however, does not justify the infringement. The defendant further says that it does not intend to use the modified press in the future, but this fact does not relieve the court from the duty of protecting the complainants by its injunction. Celluloid Co. v. Arlington Co. (C. C.) 34 Fed. 324; Sawyer Spindle Co. v. Turner (C. C.) 55 Fed. 979.

An order will be made denying the application of the complainants for a preliminary injunction as against the use of the Duffield patented press, and allowing it as against the modified press.