### BROOKFIELD et al. v. ELMER GLASS WORKS.

(Circuit Court, D. New Jersey. March 28, 1906.)

PATENTS—INFRINGEMENT—PRESS FOR FORMING SCREW INSULATORS.

The Kribs patent, No. 542,565, for a press for making screw insulators, claims 2 and 3, cover a combination of old elements, and are not infringed by the machine of the Duffield patent, No. 723,589, which does not contain all of such elements. Held, infringed, however, by modified form of the Duffield machine used by defendant.

In Equity. Suit for infringement of patent. On final hearing. See 132 Fed. 312.

Kenyon & Kenyon, for complainants.
Walter H. Bacon and Joseph C. Fraley, for defendant.

LANNING, District Judge. The complainants allege that the defendant infringes the Kribs patent, No. 542,565, dated July 9, 1895. In the introductory words to the specification of the patent it is declared that:

"The object of this invention is to provide a press by which the operation of forming insulators for telegraph lines and the like can be rapidly and accurately carried on; and the invention resides in the novel features of construction set forth in the following specification and claims and illustrated in the annexed drawings."

The specification contains a particular description of the drawings, and is followed by 10 claims. The only claims alleged to be infringed are the second and third, and they are as follows:

"(2) An actuating rod provided with a detachable screw plunger, combined with a rotary spindle adapted to engage the screw plunger, a mold, and a movable support for the mold, substantially as described.

"(3) An actuating rod provided with a detachable screw plunger, combined with a rotary spindle adapted to engage the screw plunger, a mold, a movable support for the mold, and a lock for holding the support with the mold in operative position relatively to the actuating rod and spindle, substantially as described."

The patent was sustained as a valid one in Brookfield et al. v. Novelty Glass Manufacturing Company (C. C.) 124 Fed. 551. The defense in the present case is merely that of noninfringement. In the proofs, reference has been made by the defendant's witnesses to a number of patents antedating the patent in suit; but, in this suit, they can be used only for the purpose of ascertaining the prior art, and to aid in the construction that should be given to the claims of the patent in suit. Brown v. Piper, 91 U. S. 37, at bottom of page 41, 23 L. Ed. 200; Grier v. Wilt, 120 U. S. 412, at page 429, 7 Sup. Ct., at page 729, 30 L. Ed. 712.

The parts of the invention mentioned in the second claim of the patent are so combined that the mold, after a proper quantity of molten glass has been placed in it, is brought by the rotation of the movable support or turn-table on which it rests to a point directly under the actuating rod; then the actuating rod, which moves vertically up and down by means of a lever, to the lower end of which a screw plunger has been previously attached, is pressed down, thus forcing the plunger into the molten glass; then, on raising the lever, the plunger becomes detached from the actuating rod and remains in the molten glass; the mold, and its contents of molten glass and the plunger imbedded therein, are then carried to the rotary spindle by turning the movable support or turn-table on which the mold rests; the lower end of the rotary spindle is then attached to or engages with the upper end or stem of the plunger, so that, by turning the spindle, the plunger is unscrewed from the glass. The glass insulator thus formed has on its inner surface a spiral thread corresponding with the external spiral thread of the screw plunger.

That each of the elements in this combination is old appears by reference to the following patents. The movable support or turn-table and the glass molds carried thereon are shown in the Cook patent, No. 238,090, dated February 22, 1881, in which it is said (referring to the annexed drawing) that "A is a revolving table, placed and capable of revolution upon a suitable bed, A,$^1$ and provided with handles, A,$^2$ for turning it thereon. On the table, A, are two two-part molds, B and B,$^1$" etc.; and in the Haley patent, No. 181,-434, dated August 22, 1876, in which Haley says that "in lieu of the sliding mold-guide plate shown in my patented machine I now make use of a rotary plate, P. This preferably has four equidistant sockets for the molds and makes a quarter revolution at each rise and fall of the plunger," etc.; and in the Johnson patent, No. 282,989, dated August 14, 1883, in which Johnson says that "The turn-table, A, upon which the glass molds are located, is suitably mounted upon a table, B, of any desired construction," etc.

An actuating rod provided with a screw plunger detachable therefrom is shown in the Brookfield patent, No. 113,393, dated April 4, 1871, where the patentee in his specification says:

"This invention relates to the manufacture of screw telegraph-insulators of glass or other molten material, and consists in a new and improved process, by which I subject the molten glass or metal in the mold to the action of a press to whose spindle [what is here called the 'spindle' clearly served as an 'actuating rod'] is connected a screw plunger or former by a detachable connection, and after the screw plunger has been pressed or forced into the glass or metal and the socket and screw-thread in the insulator formed, I disconnect the screw plunger or former from the press and withdraw the mold, with the plunger remaining therein, from the press. I then connect a fresh screw plunger or former to the spindle of the press, in readiness to press or force into the next mold, and so proceed, using as many screw plungers and molds as are necessary to keep the press employed; the detached plungers or formers being screwed out of the molds as soon as the glass or metal has 'set.' In carrying out my process I use a lever or a screw press; but in the present illustration I have selected a lever-press, A, to whose spindle, B, I attach a screw plunger or former, C, by a detachable connection, so that the renewal of the plunger can be easily and rapidly effected."

An actuating rod provided with a detachable screw plunger is also shown in the Pennycuick patent, No. 324,157, dated August 11, 1885.

A rotary spindle adapted to engage the screw plunger so that the screw plunger may be unscrewed from the glass is referred to in the above-mentioned Brookfield patent, No. 113,393, dated April 4, 1871, in this language:

"In screwing the plunger out after the glass is set, any suitable tool or wrench may be used; or the plunger may be attached to a screw spindle or other mechanism, so that it can be screwed out true and without injuring the thread in the insulator."

In these patents, all of which antedate the patent in suit, we find the five elements of the second claim of the patent in suit, viz.: (1) An actuating rod provided with (2) a detachable screw plunger, combined with (3) a rotary spindle adapted to engage the screw plunger, (4) a mold, and (5) a movable support for the mold.

The prior art further shows that in many instances machines for molding screw forms in molten glass and other plastic materials included a plunger, to which was permanently attached a hand-wheel or crank by which the plunger might be unscrewed from the glass or other plastic material. This instrument is found in the Brooke patent, No. 283,321, dated August 14, 1883, the Brookfield patent, No. 9,392, dated September 28, 1880, the Deemer & Eufinger patent, No. 131,153, dated September 10, 1872, and the Hemingray patent, No. 242,825, dated June 14, 1881.

It is shown that the defendant in this case has used two different kinds of machines for manufacturing glass insulators, designated as "First form of Duffield press," and "Modified form of Duffield Press." The first form of the Duffield press includes (1) an actuating rod, (2) a mold, (3) a movable support for the mold, and (4) a screw plunger provided with a handle similar to that mentioned in each of the above-named patents, Nos. 283,321; 9,392; 131,153; and 242,825.

It thus appears that, in the combination described in the second claim of the patent in suit, five old elements are brought together, while in the first form of the Duffield press used by the defendant

four old elements are brought together. What, then, is the novelty or patentable invention set forth in the complainants' patent? How should the second claim in that patent be construed? As already shown, the patentee declared that his invention resides in the novel features of construction set forth in the specification and claims and illustrated in the drawings. There was nothing novel in the construction of any of the five elements. The novelty was in the construction of the machine as a whole—in bringing the five elements into such operative relations to one another as to secure the expressed object of the patent, which was "to provide a press by which the operation of forming insulators for telegraph lines and the like can be rapidly and accurately carried on." One of these novel features of construction consists in carrying the mold on its movable support, together with the molten glass contained in the mold and the screw plunger imbedded in the glass, after the screw plunger has been detached from the actuating rod, from the actuating rod to the rotary spindle, for the purpose of there attaching the screw plunger to the rotary spindle and unscrewing the screw plunger from the glass. That the second claim must be thus construed is made clear by the specification, in which it is declared that "the mold, with the screw plunger therein, is carried toward the spindle by the continued rotation of the (movable) support"; that the screw plunger "can be detachably connected to or seated in the hollow or tubular end of the actuating rod"; that the stem of the screw plunger "can be detachably connected" to the actuating rod by a spring-pressed catch or pin; that, "when the mold arrives under the spindle, the table is again locked and the lever is then actuated to move the spindle toward the mold so that the spindle slips over the stem of the screw plunger, sticking in said mold"; and that "the stem is then secured to the spindle by the screw or fastening, so that, on the spindle being rotated in the proper direction, the screw plunger turning with the spindle will screw out of the mass or insulator in the mold, said mass having become sufficiently set to retain its form with the screw thread formed by the screw plunger."

In the first form of the Duffield press used by the defendant, there is no such construction as that above described. In it, as already stated, there is a combination of (1) an actuating rod, (2) a screw plunger provided with a permanent undetachable crank or handle for unscrewing it from the glass, (3) a mold, and (4) a movable support. The mold, with its contents of glass and the screw plunger imbedded therein, is carried, it is true, from the actuating rod by the continued rotation of the movable support. But it is not carried toward any spindle. The screw plunger is not attachable to, or detachable from, the actuating rod, nor is it attachable to or detachable from any spindle; it is simply provided, at the upper end of its stem, with a crank or handle. To hold that this combination is an infringement of the patent in suit is to hold that, while the complainants may in their machine combine five old elements, the defendants shall not be at liberty to take three of those old elements, with a fourth old element not used by the complainants, and combine

these four elements in one machine. I think the rule of the patent law does not prohibit the defendant from rejecting two of the elements found in the complainants' combination and substituting for them, not a mere mechanical equivalent thereof, but another element old in the art and in practical use many years before the complainants' patent was granted.

The complainants insist, however, that claim 2 cannot be limited to a combination in which the screw plunger is detachable from the rotary spindle, as such construction, they say, will make claim 2 substantially the same in scope as claim 1. It is true that claim 2 ought not to be so construed as to make it the equivalent of claim 1, if, by any reasonable construction, that result can be avoided. But I do not think the construction above suggested for the second claim is open to the objection raised by the complainants. The second claim mentions as one of its elements "a movable support for the mold," while the first claim mentions as one of its elements "a movable mold adapted to travel from the actuating rod to the spindle." The first claim says nothing about "a movable support for the mold." It requires no great stretch of the imagination to conceive of a mold made to travel from the actuating rod to the spindle on a track attached to a fixed table or support or on a "sliding mold-guide plate" like that referred to in the Haley patent, No. 181,434. Such a mechanism would comply with the terms of the first claim, but not with those of the second claim.

What has been said of the second claim is equally applicable to the third claim, for it is the same as the second claim, except that it adds to the second claim a device for locking the movable support, or turn-table, when the actuating rod or the spindle is to be operated.

In my judgment the first form of the Duffield press does not infringe the complainants' patent.

But I think the modified form of the Duffield press does infringe the complainants' patent. The opinion expressed in this case on the application for a preliminary injunction (132 Fed. 312), as to this form of the press, is confirmed. Indeed, Mr. George H. Benjamin, an expert who testified for the defendant, himself says:

"So far as relates to the machine shown in complainants' exhibit No. 4, sheets 5 and 6, Figs. 6 and 7 (that is, the modified form of the Duffield press), its construction seems to differ from that shown in sheets 1, 2, 3, and 4 (the first form of the Duffield press). The screw plungers in this construction, I understand, are detachable from a plunger rod, which rod is separate, however, from the actuating rod. There are also rotary spindles, two of them, for engaging the screw plungers. This latter construction approaches the construction set forth in claims 2 and 3 of the patent in suit without being identical. Assuming that claims 2 and 3 are valid for the specific construction therein recited, I think it fair to state the construction shown in Figs. 6 and 7 of complainant's exhibit No. 4 appear to me to be within the terms of these claims."

The complainants are entitled to a permanent injunction restraining the defendant from using the modified form of the Duffield press. As to the first form, an injunction must be denied. Inasmuch as the defendant does not appear to have ever used the modified form, except on the occasion and in the circumstances described in

the opinion rendered on the application for a preliminary injunction, and as neither in its proofs nor on the final argument has the defendant set up any claim of right to use this form, but has resisted only the complainants' effort to secure an injunction against its use of the first form, the question of costs will be settled on notice by either party to the other.