**HEWES et al. v. S. DEICHES & CO.**

Circuit Court of Appeals, Seventh Circuit. February 23, 1928.

No. 3867.

1. Patents ⬤⟿328—1,419,137 and 1,148,839, involving use of wire frame to support bow tie, held invalid for lack of invention.

Patents Nos. 1,419,137 and 1,148,839, for bow neckties, involving use of wire or bendable metal skeleton frame to support the tie, *held* invalid for lack of invention.

2. Patents ⬤⟿36(2)—Commercial success cannot create doubt, as well as resolve doubtful case in favor of patentee.

Commercial success of patent cannot create the doubt, as well as resolve a doubtful case in favor of patentee.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Walter C. Lindley, Judge.

Patent infringement suit by James A. Hewes and another, copartners in business

under the style and firm name of Hewes & Potter, against S. Deiches & Co. Decree for defendant, and plaintiffs appeal. Affirmed.

See, also, 14 F.(2d) 1020.

Charles F. Perkins, of Boston, Mass., and Arthur A. Olson, of Chicago, Ill., for appellants.

George E. Mueller, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. [1] Two patents, Nos. 1,419,137 and 1,148,839, are involved on this appeal. Both cover "men's neckwear." The gist of the invention lies in the use of a wire skeleton frame to support a bow tie.

In the application for the earlier patent the inventor said:

"The wire skeleton frame employed for the internal support of the fabric is pliable, formed from soft pliable metal, such as for instance, copper wire, or sheet metal, thereby retaining any given position into which the wire skeleton may be bent as the wings of the tie are arranged by the wearer. The fabric of the wings extends materially beyond the outline of the wire skeleton frame of the bow, thereby relieving the tie of any effect of rigidity at the outer edges of the wings."

Three claims are involved in this patent which read as follows:

1. "A bow necktie including a frame of pliable metal having the general outline of a bow necktie and being readily bendable to impart a variety of shapes to the tie at the will of the wearer."

2. "A bow necktie including a frame of pliable wire having the general outline of a bow necktie and being readily bendable to impart a variety of shapes to the tie at the will of the wearer."

3. "A bow necktie containing a skeleton frame having the general outline of a bow necktie substantially smaller than the outlines of the bow, said frame being composed of pliable wire readily bendable to impart a variety of shapes to the tie at the will of the wearer."

Fig. 1 of the patent is here reproduced:

In the second patent the applicant says:

"My invention relates to men's neckwear, and consists of an improvement in bow neckties, having for its object the production of a bow resembling one tied by the wearer. In my application for Letters Patent * * * Patent No. 1,149,137, I have shown a pliable wire supporting frame having the general outline of a bow tie, and designed for the purpose of imparting a variety of shapes to a soft bow tie to resemble a hand tied bow. I have discovered in practice that a narrow flat strip of copper or other pliable metal will accomplish to a measurable extent the objects of the specific form of skeleton frame shown and described in said application."

He also said:

"The obvious advantage of this tie, over the made up bow ties formerly in use, lies in the fact that this tie resembles a bow tied by the wearer, leaving latitude for some individual effect in the arrangement and conformation of the bows in different relative positions to suit the taste of the wearer, there being a well known objection to an ornamental article of wearing apparel presenting a uniform appearance on all individuals.

"It is obvious that the user of the bow tie can bend or shape the bows by his hands when arranging his tie, because of the presence of the pliable metal strip 5, and that when so formed it will retain its shape until disturbed by some external force or means.

"The specific construction herein described and claimed is somewhat lighter in weight and has less tendency to wear through the silk of the bow tie than that described in the specification and shown in the drawing in my said application Serial Number 478,277, and was not discovered until after said application was filed."

The two claims read:

1. "A bow necktie including an interior supporting frame consisting of a narrow strip of pliable sheet metal, readily bendable to impart a variety of shapes to the tie at the will of the wearer."

2. "A bow tie including an interior supporting frame consisting of the combination of a narrow strip of pliable sheet metal readily bendable to impart a variety of shapes to the tie at the will of the wearer, and a piece of stiffened fabric substantially wider than the metal strip secured to each end thereof."

Notwithstanding the exhaustive argument that has been advanced to support these patents, we feel justified in disposing of this second patent without extended dis-cussion. In view of the prior art there was no invention in the use of "a narrow strip of pliable sheet metal" inside a bow tie.

As to the first patent, the prior art as illustrated by the patent to Manheimer, No. 1,024,517 covering a bow for ladies shoes, the patent to Schultz, No. 1,067,445 covering "a bow" preclude a holding in appellants' favor as to claims one and two. In the Schultz patent we find the following statement of the invention:

"This invention relates to the construction of bows, and more especially bows for pumps and low shoes, and its object is to produce a bow provided with a former, concealed from sight, which may be readily bent to the desired shape to conform to the curve of the shoe or other article on which it is worn, and which when so bent will retain its shape and hold the bow in the form thereby imparted to it."

His first claim reads:

"In a bow having a loop, a former of plastic metal secured within said loop, adapted to retain the shape into which it is bent and to hold the loop in the form thereby imparted to it, and metal fastening means passing through the material of said loop and securing the former in place."

The disclosure of the Manheimer patent is likewise somewhat illuminating. He says:

"This body-portion is preferably an elongated strip or ribbon of any suitable material, such as silk, velvet, or the like, and has a width substantially equal to, or slightly greater than, the width of stiffening-piece and a length approximately equal to twice the length of said stiffening piece," etc.

The stiffening means is likewise described as a "preferably single piece of any suitable comparatively light flexible metallic material, such as light wire, which may be easily bent and which will, after being so bent, retain its bent shape."

The record is replete with illustrations of, and treatises dealing with, the art of the milliner prior to the issuance of the patents. The "butterfly bow" was a bow that made use of a skeleton frame of various sizes and shapes. A publication entitled "A Complete Course in Millinery," copyrighted in 1919, devotes much space to "bow making" and in one lesson the writer gives instructions on wiring bows. Another publication, "The Art of Millinery," published earlier, gives detailed instruction on the same subjects. They told the reader how to use wire skeletons to shape and hold the shape of bows of various makes. In the face of these disclo-

sures, claims one and two of the first patent are clearly void.

Claim 3 is narrower and is distinguishable from the first two in that it expressly provides that the skeleton frame shall be "substantially smaller than the outline of the bow."

This limitation or restriction, however, does not distinguish the claim from the prior art for in all of the bows the skeleton frame is smaller than the outlines of the bow. What is meant by "substantially smaller" is not readily ascertained.

In appellants' drawings accompanying the patent (reproduced above), the skeleton frame is more nearly coextensive with the outlines of the bow tie than in some of the prior art citations.

Appellants rely upon a decision in their favor rendered by the District Court of Connecticut. We are led to believe, however, that the evidence in that case did not include all of the prior art citations which appear in the record before us.

[2] Likewise appellants persuasively argue that the great commercial success which attended the appearance of their bow should resolve any doubt in their favor. We have not overlooked this argument but commercial success cannot create the doubt *as well as resolve a doubtful case* in favor of the patentee.

The decree is affirmed.