## HEWES & POTTER, Inc., v. MEYERSON et al.
### No. 195.

Circuit Court of Appeals, Second Circuit.
April 10, 1933.

See, also, 36 F.(2d) 1001.

Asher Blum, of New York City, and George E. Mueller, of Chicago, Ill., for defendants-appellants.

Charles F. Perkins, of Boston, Mass., and Alexander C. Neave, of New York City, for complainant-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

■ This is the usual suit for patent infringement. The court below decided in favor of the complainant. The patent No. 1,419,137 issued to complainant's assignor, James A. Hewes. The invention relates to men's neckwear and consists of an improvement in bow neckties, having for its object the production of a bow necktie resembling one tied by the wearer.

The bow necktie which is the subject of the invention is described in the specification as having a skeleton frame formed from soft pliable metal such as copper wire or sheet metal, which may be bent as the wings of the necktie are arranged by the wearer, and as having the fabric of the wings extending naturally beyond the outline of the skeleton frame in order to obviate any effect of rigidity at the outer edges of the wings.

It is said that the bow ties of the prior art were not capable of being molded into different shapes but were of a fixed structure, whereas those made in accordance with the patent in suit could be shaped by hand into any form that the wearer might select.

The prior art does not disclose any complete anticipation of the patent in suit and the bow ties made under it have met with wide acceptance. It is accordingly argued that the invention ought to be sustained. If such a contention were in general to prevail, a slight variation from the prior art, supported by proof of commercial success, would alone be sufficient to sustain a patent. There is always a real difficulty in rejecting a patent that is not shown to have been anticipated, for the rejection in such circumstances must depend on the mere judgment of a court that the patented article is one which a skilled workman might design without employing the inventive faculty. Such a judgment is always open to criticism on the ground that it depends upon an opinion of the judges, the validity of which cannot be demonstrated. But a similar criticism applies to many things in the law, such as the determination of what is negligence or reasonable care or unfair competition. In cases where the question is one of invention, the decision must rest on what seems to be a sufficiently important step to involve the inventive faculty. It is bound to be founded upon imponderable considerations, to involve questions of "more or less," and to be open to the charge of "begging the question."

■ It is common knowledge that the patentability of an improvement in a device is not necessarily determined by commercial success, and that such a test must be viewed with special caution when it is achieved by the aid of extensive advertising and where the owner of the patent is the proprietor of a large business in products other than those covered by the patent. Such a business gives him an initial advantage of wide trade relations and of a consequent market for any thing useful that he may attempt to sell. The commercial success of the Hewes neckties when viewed with this caution can have little bearing on the question of invention.

In our opinion the patent in suit lacks invention because the device described in it involved an obvious step for one who wished to make a necktie capable of being molded in such a way as to suit the fancy of the wearer.

The prior art affords numerous examples of bow ties nearly resembling those of the patent in suit.

United States patent No. 1,067,445, to Shultz, shows a construction of bows for pumps and low shoes. Within the loops of the bow is a relatively long and narrow strip of plastic metal adapted to "hold the bow in the form thereby imparted to it." At line 85 of page 1 of the patent, it is said "that any curve or arch desired may be imparted to the bow with the holder thus secured therein, by merely bending it and when bent, it will retain the desired curve." United States patent No. 1,024,517, to Manheimer, shows a bow adapted for use on ladies' low-cut shoes or slippers, and illustrates a bow having a shaping insert composed of buckram cloth with a frame of pliable wire secured thereto designed for insertion as a unit in the bow tie. United States patent No. 1,005,415, to Clinch, also shows a bow for shoes having an insert provided with a re-enforcement of "flexible ductile metal" to impart a longitudinal curvature.

It is argued that the foregoing devices were only calculated to allow the bow to be bent over the instep so that it might lie flat on the shoe and did not permit "molding" in any direction as does the wire frame in the patent in suit. It is true that molding was relatively unimportant in the case of bows for shoes which in general do lie flat over the instep; but in the patent of Manheimer the wire insert could readily have been molded so far as desired and in the other cases also there could have been molding to a considerable extent.

In United States patent No. 1,340,755, to Deshane, is shown a wire frame designed for holding bow neckties. If the jewels to be used in some of the forms of this invention were inserted, there is a question whether the frame would not lie back of the bow rather than within it as designed in the patent in suit. But the specification provides that the jewels may be omitted whenever desired, and in that case the frame which much resembles that of the patent in suit would naturally be placed within the bow. Deshane's frame readily suggests the kind of insert shown in the Hewes patent.

In United States patent No. 1,186,838, to Rosenfield, is shown a flexible support for hat trimmings, which, as the specification says, is "particularly adapted for the shaping of bows." In this patent the insert was of wire tape. The patentee described its merits as follows:

"A bow or ornament enclosing a support as described makes the ornament flexible and will easily permit an adjustment in the ornament without the necessity of taking the same apart. The material forming the ornament does not have to be stitched to the support, for the wired tapes at the edges prevent the material of the ornament from sliding off the support.

"A shaped bow or other ornament could easily be re-shaped without a change of support, for the support can be as easily re-shaped as the material of which the ornament is formed."

Rosenfield plainly described a molding process for bows in hat trimmings.

The bows illustrated in the prior publications, which appear in the record with instructions as to wiring ribbon, demonstrate how little room for invention remained in the particular field in which the Hewes patent was granted. Figure 1, at page 151, and the figure at page 149, show pliable wire loops like those of the patent in suit. Molding was clearly well known in the millinery art.

After a careful examination of the record, we conclude that use of a pliable material in order to shape a bow is old; that the idea of putting the shaper into the loop of the bow is likewise old. Hewes did nothing but employ well-known methods in making a bow tie. Manufactured bow ties had long been out of fashion. We find little evidence of prior attempts to deal with the problem of making moldable bow neckties in order to displace the old-fashioned stiff bow ties or to supplant those tied by the wearer. The idea borrowed from the millinery art of employing an insert that would mold, in a bow tie, was a good one, yet, had the Hewes tie not proved to be useful, it would doubtless have received no commercial acceptance. But, when it was sought to embody the idea in a practical bow tie, we think the art contained plenty of material whereby a designer might accomplish his purpose without the exercise of inventive skill.

The substantial vogue which the Hewes neckties obtained was doubtless largely due to a change of fashion, brought about by extensive advertising on the part of a men's furnishing house having large business connections, though also to some advantages which the Hewes neckties showed over the old-fashioned manufactured bow ties. But, in spite of this improvement over the prior art, we agree with the Circuit Court of Appeals of the Seventh Circuit that the proof is insufficient to show invention, and we hold

338

the patent void accordingly. Hewes & Potter v. S. Deiches & Co., 24 F.(2d) 503.

For the foregoing reasons the decree is reversed, with directions to dismiss the bill.