## SCHUMACHER v. CORNELL.

1. Letters-patent No. 133,536, granted Dec. 3, 1872, to William Johnson, for an improvement in wrenches, do not infringe reissued letters-patent No. 5026, granted Aug. 6, 1872, to John Lacey and George B. Cornell, for an improvement in wrenches for extracting bung-bushes.
2. The doctrine of mechanical equivalents has no application to this case.

APPEAL from the Circuit Court of the United States for the Eastern District of Wisconsin.

This is a suit by George B. Cornell, against Eilert Schumacher and William Johnson, for an injunction, and for damages claimed for the alleged infringement by them of reissued letters-patent No. 5026, granted Aug. 6, 1872, to John Lacey and George B. Cornell, for an improvement in wrenches for extracting bung-bushes; said letters being a reissue of original letters No. 118,617, dated Au    29, 187

The defendants justified under letters-patent No. 133,536, issued to Johnson Dec. 3, 1872, for an improvement in wrenches.

The specification and claim of both patents are fully stated in the opinion of the court.

The drawings therein referred to are as follows:—

J. LACEY & G. B. CORNELL.

*Improvement in Wrenches for extracting Bung-bushes.*

No. 5026. — Reissued Aug. 6, 1872.

*Fig.1.*          *Fig 2*

W. JOHNSON.

*Wrench.*

No. 133,536.—Patented Dec. 3, 1872.

*Fig. 1.*

*Fig. 2.*

The court below decreed in favor of the complainant, and awarded him an injunction, whereupon the defendants appealed to this court.

*Mr. William P. Lynde* for the appellants.

There was no infringement. Curtis, Patents, sect. 249; *Prouty* v. *Ruggles*, 1 Story, 568; s. c. 16 Pet. 336; *Winans* v. *Schenectady & Troy Railroad Co.*, 2 Blatchf. 279; *Bell* v. *Daniels*, 1 Fish. Pat. Cas. 372; *Fuller* v. *Yentzer*, 94 U. S. 288; *Gill* v. *Wells*, 22 Wall. 1; *Gould* v. *Rees*, 15 id. 187; *Vance* v. *Campbell*, 1 Black, 427.

There is no room in this case to invoke the doctrine of mechanical equivalents. *Seymour* v. *Osborne*, 11 Wall. 516; *Gould* v. *Rees*, *supra*; *Gill* v. *Wells*, *supra*.

*Mr. L. L. Bond, contra*, cited Curtis, Patents, sect. 332, 453–458; *Blanchard* v. *Biers*, 2 Blatchf. 418; *Sewall* v. *Jones*, 91 U. S. 171; *Root* v. *Ball*, 4 McLean, 177; *Alden* v. *Dewey*, 1 Story, 336; *Haworth* v. *Hardcastle*, Web. Pat. Cas. 484; *Ransom* v. *Mayor, &c.*, 1 Fish. Pat. Cas. 252; *Whipple* v. *Middlesex Co.*, 4 id. 41; *Winans* v. *Denmead*, 15 How. 330.

MR. JUSTICE SWAYNE delivered the opinion of the court.

This is a suit in equity founded upon reissued patent No. 5026. The reissue is for " an improved wrench for securing metallic bushing in casks and barrels," and bears date on the 6th of August, 1872. The appellee is the complainant.

The bill alleges infringement, and prays for an injunction and damages.

The answer denies the infringement, and sets up several other defences.

This opinion will be confined to the question of infringement.

The description of the appellee's wrench and his claim are thus set forth in the reissue : —

" The present invention relates to a wrench employed in securing a metallic bung-bushing within the aperture of casks, barrels, &c.; and the improvement consists in providing the shank of the wrench with a cylindrical core so arranged as to closely fit the aperture in the bushing, and a V-shaped projection adapted to fit a corresponding notch formed in the bushing, whereby the same may be turned into place without assuming an oblique position within the bung-opening, and also preventing the wrench from slipping from its seat; all of which will be more fully understood by the following description : —

" In the drawing, A represents the shank of the wrench, which consists of a plain metal bar of the requisite length. Attached to one end of this bar is a flat metal plate, B, which is provided at its centre with an elongated mortise, C, as shown in Fig. 1. This shank is so formed at its junction with the plate as to provide a V-shaped projection, D, the point of which extends forward toward the centre of the plate. E represents a cylindrical cast-metal core, which is made tapering, and so arranged as to fit the aperture in the bushing. This core is made separate from the plate, and is attached thereto by means of a bolt, F, which passes through the mortise formed in the plate, as shown in Fig. 2. The arrangement of this core is su h as to admit of being removed from the bolt by removing the nut *e*, the object of which is to allow a core of greater diameter to be substituted when used in bushings of large size, provision being made for the elongation of the mortise in the plate for the moving of the bolt toward or from the projection D, which becomes necessary when cores of different sizes are used.

" In using the said invention, the core is inserted into the open-

ing through the bushing, and turned until projection D falls into a notch formed in the bushing, which is adapted to fit the same; and by means of the core the bushing is kept steady, and prevented from assuming an oblique position in the bung-opening while being turned into place, and by the contact of the projection within the notch the wrench is prevented from slipping from its seat, thereby enabling the bushing to be readily turned into place.

"We do not wish to confine ourselves exclusively to the V-shaped projection, as any form that will prevent the core from turning independent of the bushing will produce the same result.

"Having thus described the said invention, we claim—

"The wrench herein described, consisting of a shank, A, plate, B, projection, D, and core, E, the said core adapted to fit the opening through the bushing, whereby the same is prevented from assuming an oblique position when being turned into place, substantially as described."

The wrench of the appellants, out of which this controversy has grown, is also covered by a patent, but of later date than the appellee's. The specifications and claim of this patent are brief and clear. They are as follows:—

### "DESCRIPTION OF THE DRAWING FORMING PART OF THE SPECIFICATION.

"Fig. 1 is a sectional view of the wrench; Fig. 2, a perspective view of the wrench and bushing.

### "GENERAL DESCRIPTION.

"A is the handle of the wrench; B, the projection which fits into the inside of the bushing; C, a rod which runs down through the projection B in a hole nearer one side than the other; D, a piece on the end of the rod C which fits into a recess in the bottom of B; E, a knob on the top of rod C; F, spring on rod C, under knob E, which holds the rod C up in place; G, a screw in the top of rod C, which holds knob E on securely in place; H, the bush; I, the projection on the bottom of the bushing which the part of the wrench D strikes against to screw the bushing into place.

"The operation of this wrench is as follows: The part B is placed in the bush, and the operator then takes hold of the knob E and turns it, and, as it turns, the part D at the bottom is turned out and catches against the projection I in the bushing, and then the handle A and the bush will turn with it and be screwed home.

"NATURE AND OBJECT OF THE INVENTION.

"My invention is a wrench to screw bung-bushings into beer-barrels, and fits into the opening and strikes against a projection on the bushing at the inner end of the bush, thus preserving the whole strength of the bushing. The notch on the outer side of the bushing, which weakens it, is avoided.

"CLAIM.

"The combination and arrangement of projection B, rod C, piece D, and knob E, substantially as and for the purpose set forth."

Models of both instruments have come up with the record, and are in evidence. They are made in conformity to the respective specifications of the parties. The mind is much more effectually assisted in these cases by such aids than is possible by any drawings and description, however full, without them. We are thus enabled in this case readily to come to satisfactory conclusions.

Wrenches are very old. They have long been used for various purposes in the mechanic arts. Numerous cuts representing them in different forms are found in Knight's Mechanical Dictionary, pp. 1473, 1711, 2821.

The patent is well entitled for an improvement. It could be for nothing more.

Nothing is claimed separately. Every thing is claimed together and in the aggregate. If any thing was withdrawn, and no equivalent supplied in its place, the instrument would be a failure. Each element is a part of a compound unit, and is necessary to the completeness and efficacy of the result.

A combination is always an entirety. In such cases, the patentee cannot abandon a part and claim the rest, nor can he be permitted to prove that a part is useless, and, therefore, immaterial. He must stand by his claim as he has made it. If more or less than the whole of his ingredients are used by another, such party is not liable as an infringer, because he has not used the invention or discovery patented. With the change of the elements the identity of the product disappears. *Vance* v. *Campbell*, 1 Black, 427.

But whether the patent here is for a combination or not is,

in our view, not material. If the negative be conceded, we think the differences in the two instruments are so radical that the end of this litigation must be the same.

Upon examining the models and specifications of the parties, it is found that the appellants have nothing in common with the appellees in several important particulars. They have not the flat plate B, nor the mortise C, nor the V-shaped projection D, nor the bolt F, as shown in Fig. 2, nor any arrangement touching the core whereby it can be removed, and one of larger diameter be substituted, when the size of the cavity of the bush requires such a change; and there is no notch in the flange of the bush such as that to which the appellee's wrench is applied, and hence no projection to fit into such an indentation. Without both these things the appellee's wrench would be entirely useless. They are, therefore, vital in the invention covered by his patent. The notch is the point of engagement between the bushing and the wrench when the latter, operating as a lever, gives the former its circular motion, and thus forces it home. Without this arrangement such motion could not be communicated and the desired result produced. Hence its importance in the scheme of the invention. Without it, the rest would be as worthless for the end in view as one blade of a pair of scissors disjoined from the other.

The appellants thought this notch arrangement seriously objectionable. They claimed that it weakened the flange of the bush, and that the application of the leverage necessary to give the bush the requisite circular motion until the work is done not unfrequently involved its destruction. They sought to obviate the difficulty by an invention of their own.

The first thing to be done was to change the bush so as to give it the desired strength. This could be effected only by dispensing with the notch. That was done.

Then it was indispensable that something should be substituted whereby the necessary turning motion could be given by the wrench to the bushing without injuring or destroying the latter. For this purpose a projection was put on the inside of the bush, low down. This strengthened rather than weakened it.

Bushes, like wrenches, are very old. They are not here in

question. If they were, certainly the appellants had the same right to make them with the inner projection that the appellee had to make them with the outer notch.

But, although the appellants' bush was unexceptionable, there was no wrench known in mechanics whereby it could be made to operate. The appellee's wrench was inapplicable. Projection D in his wrench, as regards such purpose, might as well have been anywhere else. It could have no possible relation of cause and effect to the thing to be done. The appellants entered the new and unoccupied field before them and succeeded. Their wrench has a projection or core attachment, which is inserted into the bush. Through this core runs a rod with a latch at the lower end, which fits into a recess at the bottom of the core. The core is introduced into the bush; the latch is turned by means of a knob at its top, so as to catch against the projection in the bush. The force of the wrench then being applied, the bush is readily screwed to its place. This was the last stage in the process of the invention.

The doctrine of mechanical equivalents has no application here, and need not be considered. The two instruments are separated by a broad line of demarcation. There is nothing in the appellee's which is suggestive of any thing in the appellants'. No one from studying the former would have been thereby led to the results embodied in the latter. They are at opposite poles. Unless the appellee is entitled to claim every form of wrench applicable to bushes, invented after his own, his bill cannot be maintained.

The appellants seem to have considered his machine as a thing to be shunned, rather than to be followed. There is, certainly, not less of novelty, utility, and invention in their wrench than in his. Whether his patent is or is not for a combination, the facts are alike fatal to this suit. There has been no infringement by the appellants.

The decree of the Circuit Court will be reversed, and the case remanded with directions to dismiss the bill; and it is

*So ordered.*