## CUTLER MAIL CHUTE CO. v. CAPITOL MAIL CHUTE CORPORATION.

### No. 119.

Circuit Court of Appeals, Second Circuit.
March 10, 1941.

Writ of Certiorari Denied May 26, 1941.

See 61 S.Ct. 1096, 85 L.Ed. ——.

Percy Freeman, of New York City (Maxwell E. Sparrow, of New York City, of counsel), for appellant.

C. P. Goepel, of New York City, for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

### SWAN, Circuit Judge.

This is an appeal in a patent infringement suit in which the usual defenses of invalidity and noninfringement were set up by the defendant. Both issues were determined in the plaintiff's favor by the trial court and both are disputed by the appellant here.

The patent in suit is for an improvement in mail chutes of the type commonly used in office buildings to conduct letters deposited at the several upper floors to a mail box at the bottom of the chute. The specifications state that experience has shown that mischievous or careless persons are likely to drop matches, lighted cigaret stubs or other litter into the mailing apertures of the chute, and that the object of the invention is to provide a simple and efficient means for keeping the chute free, to an adequate extent, from the reception of objects other than mail matter. This is accomplished by providing "means whereby the letters are properly directed as heretofore from the mailing aperture into the chute, but these undesirable objects are automatically diverted and discharged to the exterior so that they fall at the feet of the offending person." An embodiment of the invention, as described in the patent, shows a pocket, casing 8, affixed to the front of the chute and having a mailing aperture 9 at its top and a discharge aperture 11 at its bottom. An inclined plate 12a with an opening 17a extending across it near the top, forms the front wall of passage 16 through which letters pass into the chute. By arranging adjacent to the opening 17a a pivoted and weighted curved plate 20a, the patentee provides "a trap" adapted to intercept light-weight litter and divert it through opening 17a, whence it falls to the bottom of pocket 8 and drops out through the discharge aperture 11, while the heavier mail matter displaces plate 20a and drops through passage 16 into the chute. It will suffice to quote claim 2 which reads as follows: "2. The combination with a mail chute having a mail receiving aperture and a passage leading therefrom to the interior of the chute and with a delivery aperture below the first-named aperture adapted to discharge exteriorly of the chute, there being communication between said passage and the discharge aperture, of a weighing device operating in the passage to normally direct light foreign matter deposited in the mailing aperture to the delivery aperture but adapted to be displaced by mail matter and permit its passage to the chute."

Appellant contends that plaintiff's idea of an apparatus which accepts mail and rejects refuse is old in the art. Specific reference is made to the McAllister Patents No. 402,028 (1899) and No. 1,042,458 (1912) and the patent of Teevan et al. No. 626,251 (1899). The McAllister patents covered a mail receptacle for outdoor use embodying a chute with a false bottom composed of

64

bars spaced apart to allow rain and snow to fall through, thereby preventing it from running down into the mail receptacle proper. The appellant urges that a little wider spacing of the bars would have produced a means of diverting litter as well as rain—a modification which would not amount to invention. But its chief reliance is on the Teevan patent. This is a patent for a "letter box", which is analogous art and is classified by the Patent Office in the same class as mail chutes, namely, class 232 "Deposit and Collection Receptacles." The patent states that the invention relates to improvements in letter boxes and is designed "to prevent the contents being injured by the introduction of lighted matches, burning cigars or cigarettes, and such like." Thus the conception of separating mail from trash and preventing the latter from getting into the collection receptacle long antedated the patent in suit. And the means adopted by Teevan to accomplish this purpose are strikingly similar to those adopted by Van Riper more than 30 years later. Within the letter-box is a chute A having its upper open end coinciding with the letter-slot. At the other end of the chute is hinged a weighted flap C so balanced that a descending letter will cause it to open and allow the letter to fall into the box. The bottom side D of the chute is provided with a number of slots of sufficient width to allow matches, cigarettes and such like to drop through this grid into a receptacle E fixed beneath the chute.

Since Van Riper is chargeable with knowledge of everything disclosed by the Teevan patent and the latter shows the concept of segregating letters from trash that might be put into the receiving aperture of a mail collecting receptacle, Van Riper's claim to invention must rest upon the mechanical changes which would be required to adapt the Teevan structure for use in a mail chute. Obviously Teevan's chute would have to be compressed and turned from a nearly horizontal position to one nearly vertical. It is urged that if that were done the trash would gather at the bottom of the chute against the flap C; and so it would if the edge of the flap rested on a bottom bar of the chute and enough below the last slot of the grid to form a shelf upon which the trash could rest. But the merest tyro should be able to see that the more nearly vertical the chute, the more open it could and should be. Teevan had the bars of his grid rather close together because it was nearly horizontal and the letters must be as sure to pass over the openings as the trash must be to drop through them. To space more widely apart the two lowest bars of the grid and to slant the hinged flap C so that it would divert the trash into the opening rather than serve as a shelf upon which it could gather, were adaptations that would shriek to be made to one who was trying to solve Van Riper's problem with Teevan's structure before him. We are of opinion that the appellant is right in urging that nothing but ordinary mechanical skill was required to convert Teevan's device into that of the patent in suit. This conclusion can be reached without doing violence to the usual presumption of validity arising from the grant of a patent, because the Teevan patent was not cited as a reference in the Patent Office. Eclipse Machine Co. v. E. Krieger & Sons, Inc., D.C., 15 F. Supp. 97, 106, affirmed, 2 Cir., 87 F.2d 755.

Decree reversed.