**GERALD M. FRIEND, Inc., v. WALSH et al.**

**No. 232.**

Circuit Court of Appeals, Second Circuit.

Feb. 25, 1944.

S. Howard Imbrey, of New York City (John F. Ryan, of New York City, of counsel), for appellant.

Leo Lilienfeld and Jacob Lippman, both of New York City (Mock & Blum, of New York City, of counsel), for appellees.

Before SWAN, CLARK, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This litigation relates to a garment known as a dickey, which may be worn by girls and women under a sweater or coat as a substitute for a blouse. The patent in suit, No. 2,280,360, was issued to the defendant Walsh, a resident of the State of New York, in April, 1942 upon an application filed on June 15, 1939. The other defendant, a New York corporation, is an exclusive licensee under the Walsh patent and is engaged in manufacturing and selling the patented dickey. This garment was put on the market a few months before the date of Mrs. Walsh's patent application and met with ready acceptance by the trade, the number of dickeys sold increasing from 97,000 during the last six months of 1939 to 480,000 for the year 1942. During 1941 several unlicensed manufacturers began to put out garments which the defendants believed to be infringements of their dickey. The plaintiff, a Massachusetts corporation, was one of them. In June, 1942, it brought the present action to obtain a declaratory judgment that the Walsh patent was invalid and was not infringed by the dickeys marketed by it. Its complaint also charged the defendants with unfair competition by threatening its customers with suits for infringement of the Walsh patent. After a lengthy trial the District Court held that the patent was valid and infringed by the plaintiff's garments but that the defendants had not unfairly competed with the plaintiff. The action was dismissed on the merits, with costs to the defendants. The plaintiff has appealed.

The "invention" of the patent "relates to improvements" in a garment "of the waist type". The specifications and drawings describe it as having a front panel and a back panel connected by shoulder straps to form a neck opening with a collar of the soft fold type. The lower corners of the

front panel are connected with the corresponding corners of the back panel by two elastic straps, one on each side of the wearer's waist line. The single claim reads as follows:

"A dickey for women's wear comprising a front panel and a back panel, both panels extending down to the waist line and being spaced at the sides along substantially parallel edges, said panels being joined together at the shoulders and around the neck by means of a loosely fitting collar, elastic bands connecting said panels at the lower ends of their side edges, the upward displacement of the bottom edge of said front panel from said waist line, due to the natural bust configuration of the wearer causing a stress in said elastic bands and a resulting downward pull of the side edges of said front panel, thereby holding the upper portion of said dickey, including said collar, in place."

Garments of this general type were well known in the clothing art long before the Walsh dickey was brought out. The plaintiff attempted to prove complete anticipation by prior uses but the District Court held that the evidence did not measure up to the strict standard of proof required on that issue. Nevertheless, even if the evidence failed to prove anticipation by a precisely similar dickey, the testimony is clear that there was no novelty in dickeys as such, and the garments pictured in exhibits 16, 23 and 24, as well as the prior patents hereafter to be discussed, show that the range left for invention, if any, was extremely narrow. What the patentee apparently thought to be new was the use of elastic waist encircling straps to prevent the panels from sliding upward. The specifications state:

"It is well known that straps have been employed in the art for securing the lower portions of the front and back panels together. However, they do not function in such a manner as to cause the collar to fit properly. It has been found that the elastic straps closely embrace the waist preventing the riding up of the panels and at the same time urging the collar downwardly into embracing engagement with the shoulders effecting a graceful and comfortable fit thereof."

Thus the patent shows on its face, the plaintiff argues, that the alleged invention consists merely in substituting an elastic tape for a nonelastic tape to join together the lower corners of the two panels.

The use of elastic straps in substantially the same setting and for the very same purpose of preventing the garment from riding up is disclosed in reissue No. 5,110 to Lear issued in 1872. The Lear patent is for an "Improvement in Chest Protectors." It shows a front panel and a back panel, called "pads," which are rectangular in shape and are joined at the top by shoulder straps and at their lower corners by "waist straps" which may be "of an elastic material" and "serve a very useful purpose" as they "retain the pads in proper place about the wearer's body." The defendants criticize the Lear reference because its garment was for protection rather than adornment of the wearer, as is a dickey. They say also that Lear contemplated elastic shoulder straps which the Walsh dickey does not have and could not have used without impairing the fit of the collar. We do not think the criticisms valid. Although Lear did not relate to a dickey as such it taught the construction of a garment having front and back rectangular panels and the use of elastic waist straps to connect the lower corners of the panels in order to hold the garment in proper place. As to the shoulder straps we find nothing in the Lear specifications to indicate that they were to be of elastic material but, if they were, it surely would not require invention to substitute nonelastic straps. Lear was not cited against the Walsh patent—a fact which weakens the presumption of validity arising from the grant of a patent. Cutler Mail Chute Co. v. Capitol Mail Chute Corp., 2 cir., 118 F.2d 63, 64; Western Auto Supply Co. v. American National Co., 6 cir., 114 F.2d 711, 713.

Numerous other patents, of which only a few need be mentioned, were also put in evidence. Another form of "lung protector and undervest," which employs elastic straps to connect the front piece and back piece, is shown in patent No. 146,879 to Culver. The Jaynes patent No. 489,681 (not cited in the Patent Office) discloses a sleeveless and collarless jacket having the front and back connected by elastic side pieces. Patent No. 861,427 to Billstein shows a "lady's chemisette or shield" having an ornamental collar and a belt to hold the front panel of the garment in place. Ornamental collars applied to dickeys are pictured in exhibits 23 and 24. The "Peter Pan" type of collar of the Walsh dickey was concededly old. In view

of these prior art references we are satisfied that construction of the garment designed by Mrs. Walsh involved no invention and that the patent issued to her should be held invalid. See Buchanan v. W. B. Foundations, Inc., 2 cir., 123 F.2d 843; K. Kaufmann & Co. v. Leitman, 2 cir., 131 F.2d 308. Only when invention is in doubt may commercial success be thrown into the scales. Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 474, 55 S.Ct. 449, 79 L.Ed. 997; Trubenizing Process Corp. v. Jacobson, 2 cir., 98 F.2d 899, 902; Hewes & Potter v. Meyerson, 2 cir., 64 F.2d 336; Buchanan v. Wyeth Hardware & Mfg. Co., 8 cir., 47 F.2d 704, 706. It would seem that the success of the Walsh dickey may well be ascribed to its advertising, to the cheapness of its price and of its laundering as compared with shirtwaists, and to a style trend toward sports clothes in recent years. There was testimony that during the last war also there was an increased demand for dickeys. In any event commercial success cannot tip the scales in favor of patentability where lack of invention is as clear as we find it here.

With respect to the claim of unfair competition it will suffice to say that we are in accord with the District Court's findings and conclusions.

The judgment is reversed and the cause remanded for entry of a judgment in conformity with this opinion. One half of the costs of appeal is awarded to the appellant.