**ALEX LEE WALLAU, Inc.**

v.

**J. W. LANDENBERGER & CO., Inc.**

United States District Court
S. D. New York.
May 25, 1954.

556

Mock & Blum, New York City, for plaintiff.

Margaret W. Smith and Howson & Howson, New York City, Kennard N. Ware, Philadelphia, Pa., of counsel, for defendant.

DIMOCK, District Judge.

This is a suit for the alleged infringement of a design patent and a utility patent for footcaps. Defendant moves pursuant to Rule 56, F.R.C.P. 28 U.S.C., for summary judgment dismissing the complaint on the grounds that the patents are invalid and not infringed.

Plaintiff contends in effect that the issues of validity and infringement of a patent are never susceptible of determination on a pre-trial motion. Plaintiff's affidavits, however, raise no genuine issues of fact. The Court of Appeals of this Circuit has indicated that the remedy of summary judgment is available in patent suits where no factual issues are raised and where the patents and products involved are sufficiently simple to make expert testimony unnecessary. Bridgeport Brass Co. v. Bostwick Laboratories, 2 Cir., 181 F.2d 315, 316, 319; See also Steigleder v. Eberhard Faber Pencil Co., 1 Cir., 176 F.2d 604; Vulcan Corp. v. International Shoe Machine Corp., D.C.D.Mass., 68 F. Supp. 990, affirmed 1 Cir., 158 F.2d 520, certiorari denied, 330 U.S. 825, 67 S. Ct. 868, 91 L.Ed. 1275. Such is the case presented here. Since there are no genuine issues of fact or questions of expertise involved in the determination of this motion, defendant should neither have to undergo the expense of trial nor the prolongation of the threat to its business involved in the wait for trial of an infringement action. See Steigleder v. Eberhard Faber Pencil Co., 1 Cir., 176 F.2d 604, supra.

I turn first to the issue of infringement.

The products in suit are women's fabric foot coverings which are worn in lieu of stockings to protect the bare foot from contact with the shoe. These "foot-

caps", as plaintiff calls its product, or "Footlets", as defendant labels its product, are commonly worn with summer or sport shoes. Plaintiff sues as owner of a footcap utility patent, Patent No. 2,-649,588, which was issued on August 25, 1953, and of a footcap design patent, Des. 166,540, issued on April 22, 1952.

The undisputed facts are as follows: Since October, 1950, defendant has been manufacturing and selling a one-piece fabric foot protector the structure of which is set forth in Patent No. 2,628,-438, issued on February 17, 1953. Defendant's patent is not contested here. Some time after the issuance of plaintiff's patent, and the appearance of its patented product on the market, defendant added a foam rubber pad to the heel portion of its foot protector. Defendant's inclusion of this foam rubber pad in its product is the alleged infringement of plaintiff's patents. There is no contention that any other portion of the structure of defendant's product infringes plaintiff's patent. Indeed, except for the foam rubber heel pad, defendant's product is covered by a patent earlier than plaintiff's utility patent, as I have indicated above. Thus, the issue is simply whether defendant's use of a foam rubber heel pad in connection with its otherwise unexceptionable foot protector constitutes an infringement of plaintiff's patents.

■ The scope of a patent is determined by the inventor's claims as finally approved by the Patent Office. Paper Bag Patent Case, Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 419, 28 S.Ct. 748, 52 L.Ed. 1122. Patent No. 2,649,588, plaintiff's utility patent, sets forth two substantially identical claims, except that claim 2 specifically refers to the use of sponge rubber for the more generally described "resilient friction pad" set forth in claim 1. Claim 2 is as follows:

"A footcap comprising a toe panel, a heel box panel and an intermediate panel, a continuous seam joining said toe panel to the forward edge of said intermediate panel, a continuous seam joining said heel box panel to the rear edge of said intermediate panel, an inelastic binding on the top edge of said heel box panel extending forwardly to the junctures of said heel box panel and said intermediate panel, an elastic binding on the top edges of said intermediate panel and the inner edge of said toe panel, the rear ends of said elastic binding extending to the terminal ends of said inelastic binding, and a sponge rubber friction pad on the rear portion of said heel box panel."

It is quite apparent that Patent No. 2,-649,588 describes a combination, a footcap composed of a number of elements, and does not purport to cover separately each of the elements comprising the combination.

■ It has long been established that no one element of a combination, no matter how important, can be regarded as the substance of the invention for the purposes of patent protection. See Schumacher v. Cornell, 96 U.S. 549, 554, 24 L.Ed. 676; Leeds & Catlin Co. v. Victor Talking Mach. Co., 213 U.S. 301, 318, 29 S.Ct. 495, 53 L.Ed. 805. Further, the Supreme Court has held that any part of a combination patent, even if the part is itself a clearly patentable invention, may be freely used unless it is separately patented. Special Equipment Co. v. Coe, 324 U.S. 370, 376, 65 S.Ct. 741, 89 L.Ed. 1006.

■ Conversely, for a finding of infringement, every element of a patented combination is presumed to be material. Therefore, in order to find infringement of a combination patent, every element of the patented combination must appear in the accused product. Etten v. Kauffman, 3 Cir., 121 F. 2d 137, 139; Steigleder v. Eberhard Faber Pencil Co., D.C.D.Mass., 81 F. Supp. 143, 145, affirmed 1 Cir., 176 F.2d 604. If a single element is omitted from the accused combination there can be no infringement. It is true, as plaintiff con-

tends, that a substitution of a substantially equivalent element merely to avoid a claim of infringement will not avail the infringer. See Etten v. Kauffman, 3 Cir., 121 F.2d 137, 140, and cases there cited.

A patentee is estopped to invoke this doctrine of equivalents, however, as to any element which he added to his rejected claim in order to obtain patent protection. See Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 136, 62 S.Ct. 513, 86 L.Ed. 736; Schriber–Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 220–221, 312 U.S. 654, 61 S.Ct. 235, 85 L.Ed. 132; I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 443–444, 47 S.Ct. 136, 71 L.Ed. 335; Keith v. Charles E. Hires Co., 2 Cir., 116 F.2d 46, 48. A patentee is not permitted to narrow his claim in order to sustain its validity and then seek broader protection against infringement. Such is plaintiff's dilemma.

In the original application for plaintiff's patent, seven claims were set forth, all of which were rejected for "failing to patentably define from the prior art." The two claims set forth above were finally accepted after amendment. The amended claims contained two elements which did not appear in any of the original claims, "a continuous seam" joining the toe panel to the intermediate panel, and "a continuous seam" joining the heel box panel to a rear portion of the intermediate panel. The parties have submitted affidavits attempting to define "continuous seam". Under neither of the two proffered definitions does the accused product contain any "continuous seams". It cannot, therefore, infringe plaintiff's combination.

■ If I accept plaintiff's explanation of "continuous seam" and treat any stitching as a seam, a continuous seam is an unbroken line of stitches. If I accept defendant's definition, a "continuous seam" is a joining of two pieces of material which are completely separated, the edges of which must be sewn together in an unbroken line for complete attachment. Defendant's foot protector, which is a one-piece structure with stitched folds, contains neither an unbroken line of stitching around any portion nor any joinings of separate pieces of material. Where the three-piece assembly has a continuous seam around the toe of the article, the single piece construction has two stitched folds separated by the toe. Likewise, where the three-piece assembly has a continuous seam around the heel, the single piece construction has two stitched folds separated by the heel. Plaintiff is prevented by "file-wrapper estoppel" from charging that defendant's separate fold construction is an equivalent of the continuous seam element of plaintiff's combination.

■ Even without resort to this file-wrapper estoppel and on the basis of the prior art alone, plaintiff's patent cannot be construed to cover one-piece structures like defendant's, though they embody foam rubber heel pads. A patent which represents limited improvement over prior art must be narrowly construed. See Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U.S. 285, 294, 37 S.Ct. 502, 61 L.Ed. 1136; Penmac Corporation v. Esterbrook Steel Pen Mfg. Co., 2 Cir., 108 F.2d 695, 697. One-piece foot protectors with some form of heel lining date back at least to 1933. The Paul stocking foot, Patent No. 1,912,539, issued June 6, 1933, is a one-piece foot protector with a liner of waterproof material in the heel. The Wilson foot protector, patented May, 1935, is a one-piece knitted structure with elasticized margins on the two sides of the foot opening and a liner of friction material in the heel. Thus, plaintiff's three-piece foot protector with an elasticized binding around the upper edges of the toe and intermediate panels and a foam rubber heel pad is at most an improvement. Indeed, the inventor himself describes it as an improvement. The claims in terms describe a three-piece structure and in view of the extremely limited nature of the invention, if such it be, they cannot be construed to include one-piece foot protectors.

Since I have thus decided that defendant's product does not infringe plaintiff's utility patent, the motion can be decided without passing on the validity of that patent. The Supreme Court has indicated, however, that it is often a matter of sound public policy to pass upon the validity of a patent even when there is no infringement so as to keep invalid monopolies from fencing off public access to the fruits of progress. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L. Ed. 1644. The Court of Appeals of this Circuit has interpreted this as a permission rather than a direction with the caveat that "claims may be so evidently invalid that the court should so declare." Harries v. Air King Products Co., 2 Cir., 183 F.2d 158, 162–163, quoted with approval, Wabash Corp. v. Ross Electric Corp., 2 Cir., 187 F.2d 577, 582–583. It is my understanding of these cases that, when a patent is obviously invalid, it should not be left standing as a "scarecrow". Since no evidence is presented nor can I conceive of any evidence which could persuade me that either the subject of the utility patent or of the design patent in suit is a patentable invention, I conceive it to be my duty to pass on their validity.

First I consider the utility patent.

Section 102 of Title 35 of the United States Code, July 19, 1952, c. 950, § 1, 66 Stat. 797, provides that:

"A person shall be entitled to a patent unless—

"(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent * *."

Section 103 of Title 35 of the United States Code, July 19, 1952, c. 950, § 1, 66 Stat. 798, further conditions patentability:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

In addition to the one-piece foot protectors discussed above, defendant has submitted on this motion the Cooper patent, No. 2,394,844, issued February 12, 1946. The Cooper "stocking protector" is a three-piece structure with an elasticized binding around the foot-opening. In his affidavit in opposition to this motion, the inventor of plaintiff's patented structure states that the Cooper patent: "merely shows a slipper made of pieces of chamois leather or textile fabric, stitched together." This statement, by what it omits, confirms what a comparison of the Cooper patent with plaintiff's patent makes clear. There are no significant structural differences between the two. The slight functional difference accounts for the difference in material. The Cooper stocking protector was designed to cover the stockinged foot and protect the stocking from the shoe. Plaintiff's product is intended to protect the bare foot from contact with the shoe.

Apparently, the Cooper patent was not cited as a reference in the patent office. The patent grant therefore does not create a presumption of the validity of plaintiff's patent in relation to the Cooper patent. Cutler Mail Chute Co. v. Capitol Mail Chute Corp., 2 Cir., 118 F. 2d 63, 64, certiorari denied 313 U.S. 580, 61 S.Ct. 1096, 85 L.Ed. 1537; Gerald M. Friend, Inc. v. Walsh, 2 Cir., 141 F. 2d 180, 181; Gebhard v. General Motors Sales Corp., 77 U.S.App.D.C. 331, 135 F.2d 248; Eclipse Mach. Co. v. E. Krieger & Son, D.C.E.D.N.Y., 15 F.Supp. 97, 106, affirmed 2 Cir., 87 F.2d 755.

Thus, the question is simply whether the differences between the subject mat-

ter of plaintiff's utility patent and the subject matter of the Cooper patent are such as "would have been obvious * * to a person having ordinary skill in the art" of making women's foot protectors. The only difference between them, in addition to the slight difference in function discussed above, is the use of the foam rubber heel pad. The use of a friction heel liner is not new in the art. The use of a new material—foam rubber—is thus the only change which plaintiff's product introduces. There is no contention that foam rubber was itself invented by the patentee; only that he recognized its potentialities as a heel liner for foot protectors. Unless it produces a new mode of operation, the selection and substitution of material which produces a result to be expected is the very kind of contrivance which section 103 of Title 35 excludes from patent protection —one which is obvious to a person having ordinary skill in the art. See Aero Neck-Band & Collar Co., Inc. v. Beaver Mfg. Co., 2 Cir., 97 F.2d 363, 365; Fowler v. Honorbilt Products, 3 Cir., 131 F. 2d 153, 154–155. Thus, plaintiff's foot protector does not meet the standards of patentability.

Nor does plaintiff's allegation of the commercial success of its product save its patent. Commercial success cannot validate a patent which is clearly lacking in invention. Jungersen v. Ostby & Barton Co., 335 U.S. 560, 567, 69 S.Ct. 269, 93 L.Ed. 235; Gerald M. Friend, Inc., v. Walsh, 2 Cir., 141 F.2d 180, 182.

Finally, I turn to the design patent.

Since a design patent protects appearance, not utility, Gorham Mfg. Co. v. White, 14 Wall. 511, 524–525, 20 L.Ed. 731, the validity of a design patent is peculiarly susceptible of determination on a motion for summary judgment.

The Court of Appeals of this Circuit, in invalidating a design patent for a fruit juice extractor for lack of invention, stated:

"It has many times been held that there must be originality and taste to justify the granting of a design

patent, and that mere mechanical skill is insufficient. Smith v. Whitman, 148 U.S. [674], 675, 13 S.Ct. 768, 37 L.Ed. 606. If the design goes no farther than to embody an obvious neatness and attractiveness that will make articles of household use more compact and pleasing than has generally been the case, this is not in itself enough. * * * The subject of design patents is difficult, for there are no standards. Yet we are obliged to determine, as best we may, whether the design in question is original and aesthetic and involved a step beyond the prior art requiring what is termed 'inventive genius.'" A. C. Gilbert Co. v. Shemitz, 2 Cir., 45 F. 2d 98, 99.

The design patent in suit was issued for the unornamented form of the foot protector described above in connection with the utility patent. The inventor, in his affidavit, distinguishes the appearance of his utility foot protector from his design for it on the basis of the difference in the size and shape of the foam rubber heel pad. Since the foot protector is manufactured of transparent stocking fabric, the size and shape of the heel pad do affect the external appearance of the foot protector. Nevertheless, neither the form of the foot protector nor its single adornment, a small crescent-shaped heel pad, can be described as "aesthetic" within the meaning of the test set forth in the Shemitz case, supra.

The design patent in issue goes no farther than at most to embody an obvious neatness and attractiveness that make a common article of wearing apparel more compact and pleasing than has generally been the case.

Further, it did not involve a step beyond the prior art requiring "inventive genius." Fabric foot protectors of varying composition and method of manufacture have been the subject of utility patents since at least 1933. The Paul stocking foot, Patent No. 1,912,539, issued June 6, 1933, is the earliest which

has been submitted on this motion. An examination of the three prior art patents which are in the record before me discloses that the basic form of all foot protectors is essentially the same— the shape of the female foot. The variations in outline are to be found in the shape of the upper cut-off line which is essentially determined by the shape of the female shoe, as dictated by fashion. Thus, the design patent meets none of the tests for patentability and is not, therefore, entitled to patent protection.

Since plaintiff's utility patent has not been infringed and is invalid, and since plaintiff's design patent is invalid, defendant's motion to dismiss is granted. Settle order on notice.