MOTT CORPORATION and C. W. Mott Research Engineers, Plaintiffs,

v.

SUNFLOWER INDUSTRIES, INC., and Owen Murrell Crump, Defendants.

No. KC-920.

United States District Court
D. Kansas.
April 3, 1961.

George N. Hibben (of Hibben, Noyes & Bicknell), Chicago, Ill., and Thomas E. Scofield and Carter H. Kokjer (of Scofield, Kokjer, Scofield & Lowe), Kansas City, Mo., for plaintiff.

Claude A. Fishburn and Orville O. Gold (of Fishburn & Gold), Kansas City, Mo., and W. C. Jones (of Payne, Jones, Anderson & Payne), Olathe, Kan., for defendants.

ARTHUR J. STANLEY, JR., Chief Judge.

This action is a suit for the infringement of a patent owned by the plaintiff, Mott Corporation. An injunction barring future infringement, damages for past infringement, an award trebling said damages and attorney fees are sought. The defendant Crump is president and owner of Sunflower Industries. The patent involved is No. 2,590,065, for a Mower Structure, issued March 18, 1952, and hereafter referred to as the Mott patent. Although the Mott patent has thirteen claims, the plaintiffs have relied only on Claims 6 through 13 in this action. The defendants have denied infringement and allege that the patent is invalid on the grounds of anticipation and lack of invention over the prior art. The defendants also contend that the Mott patent was obtained on the basis of misrepresentations made to the Patent Office by the inventor, Carl W. Mott, Sr.

The Mott patent is for a machine which is sold commercially under the name of the Mott Hammer-Knife Mower. This grass and weed mower is sold in a number of sizes, ranging from smaller machines suitable for cutting lawns to larger machines used for highway maintenance, parks, golf courses and airports. Prior to the advent of the Mott mower, there were three types of mowing machines: sickle bar, reel and rotary. The sickle bar is used primarily for cutting tall crops or weeds. It does not cut-up or chop the material mowed, but rather lays it down intact. The sickle bar mows roughly and hence is not usually used where appearance is important. The reel mower is used primarily on lawns, parks and golf courses, where the grass is not tall and where a smooth, even and attractive appearance is desired. It cannot be used successfully in tall weeds and grass. The rotary mower can be used to cut tall weeds and grass as well as lawns. It gives a smooth and even cut when used for lawn work. The rotary can be a hazordous machine if used to cut where there are rocks, cans, bottles, or debris. If such objects are struck by the rapidly rotating blade, they may be thrown from under the mower with great force. When used in tall weeds and grass, the rotary tends to

leave windrows of clippings, which can be disadvantageous.

It is claimed that the Mott mower can be used in short or tall grass; that it mows smoothly and evenly, leaving finely chopped clippings without windrowing; and that it does not throw rocks or other debris struck by the machine. The operator walks behind the smaller models of the Mott mower, while the larger machines are pulled or pushed by a tractor. The cutting device consists of a rapidly rotating shaft, carried horizontal and parallel to the ground, on which are mounted a number of flails or knives. The knives are carried on pins which allow them to swing out radially when the shaft is rotating. A roller and wheels support the shaft above the ground at whatever height is required to leave the grass at the desired length. The knives are spaced around the shaft in a helical pattern which produces an overlapping of the swaths cut by each blade. The mower apparently takes its name from the similarity between its action and that of a hammer-mill.

The plaintiffs contend that the Mott patent claims two features that amount to invention. The first is what is termed in the patent as the "back-to-back" mounting of the pairs of blades. Each of the blades is about five inches long, three-quarters inch wide and one-sixteenth inch thick. On a mower which cuts a four-foot swath, 120 blades are carried on the rotatable shaft. These blades are mounted in pairs, in four rows spaced circumferentially around the shaft, fifteen pairs of blades in each row. Each blade has a hole in one end for a pin, by which the blade is attached to the shaft. At the opposite end, the blade is bent or curved. The bent or curved portion is about one inch long. The angle of the bend is claimed to be critical; i. e., if greater than about 65° as measured between the blade tip and the plane of the shaft of the blade, grass will collect on the bent portion of the blade and make the mower inoperative. The "back-to-back" feature consists of mounting each pair of blades on a single pin, with the blade tips diverging in opposite directions. In the language of the patent, the mower and blades are described as follows in Claim 7:

"A grass and the like cutting structure of noncutter bar type comprising a blade carrier rotatable at high speed about a horizontal axis spaced upwardly from the ground surface, and a plurality of blades mounted on said carrier in spaced relation axially thereof and projecting radially of the carrier axis during such high speed rotation, each blade having a cutting edge portion inclined toward the axis of the rotating carrier, certain of the blades in successive contiguity axially of the carrier being in pairs with the inclined cutting edge portions thereof diverging oppositely at angles of departure from a median extending therebetween radially of the carrier, said angles of departure being confined to within approximately 65°, said pairs of blades being arranged in an interrupted helical formation about the carrier axis, and said pairs of blades having a proximity axially of the carrier to cut swaths that lap the swaths cut by axially adjacent pairs of blades."

Claims 11, 12 and 13 relate only to the blades. Claim 11 reads as follows:

"A cutter flail for a rotary grass mower comprising a rigid strap-like body having a substantially straight shank portion and a cutter end portion extending from one end thereof, said cutter end portion extending out of the plane of said shank portion at a maximum angle of departure in the nature of 65°."

The defendants have admitted that if the Mott patent is valid, their mower, such as is shown by Exhibits 23a–c, would be an infringing device. With this admission, the court is led directly to a consideration of the validity of the patent.

562

■ The defendants' first contention on the issue of validity is that the usual presumption of validity is not applicable in this case because the Patent Office failed to consider certain pertinent prior art. It has been held that the force of the presumption of validity is much diminished, if not destroyed, if the Patent Office overlooked pertinent prior art. Gomez v. Granat Bros., 177 F.2d 266 (9th Cir. 1949), cert. denied, 338 U.S. 937, 70 S.Ct. 351, 94 L.Ed. 578 (1950); Gerald M. Friend v. Walsh, 141 F.2d 180 (2d Cir. 1944); American Soda Fountain Co. v. Sample, 130 F. 145 (3d Cir. 1904), cert. denied, 195 U.S. 634, 25 S.Ct. 791, 49 L.Ed. 354 (1904). The two patents upon which the defendants place principal reliance as supporting this contention are Wallace, No. 1,051,933 (1912); and Goeldner, No. 1,258,109 (1913). The following references were made of record during the prosecution of the Mott patent:

| Inventor | Number | Date |
| --- | --- | --- |
| Campbell | Re. 14,886 | 1920 |
| Holland-Letz | 578,250 | 1897 |
| Ike | 1,301,442 | 1919 |
| Johnston et al. | 1,698,724 | 1929 |
| Sterneman | 1,870,932 | 1932 |
| Cline | 2,034,505 | 1936 |
| Mable | 2,110,147 | 1938 |
| Maga | 2,220,342 | 1940 |
| Loewe et al. | 2,378,488 | 1945 |
| Bailey et al. | 2,505,089 | 1950 |
| Henderson | 2,509,343 | 1950 |
| Herriot et al. | 356,602 (British) | 1931 |

Wallace and Goeldner are references which should be considered in assessing the validity of the Mott patent, but their disclosures are not of such importance, as compared to the more recent patents cited by the examiner (particularly Johnston, Bailey and Herriot), as to invoke the rule destroying the presumption of validity. See Otto v. Koppers Company, 246 F.2d 789 (4th Cir. 1957), cert. denied, 355 U.S. 939, 78 S.Ct. 427, 2 L. Ed.2d 420 (1958).

■ A collateral issue has been raised with regard to three patents cited by the defendants. Henderson, supra; Agee, No. 2,506,054 (1950); and Bartch, No. 2,580,640 (1952), were all issued on applications which were filed later than the original application for Mott. Although the Mott patent in issue resulted from a divisional application which had a filing date later than Bartch and Agee, under 35 U.S.C.A. § 121, the divisional application is entitled to the filing date of the original application. Neither Sherwin-Williams Co. v. Marzall, 88 U.S. App.D.C. 374, 190 F.2d 606 (D.C.Cir. 1951), nor Application of Gregg, 244 F. 2d 316, 44 C.C.P.A. 904 (1957), cited by the defendants, holds that patents with later filing dates are proper prior art. Later filed applications which may have matured into patents prior to the Mott patent, or which were being prosecuted at about the same time, are not inconsistent with Mott's claim of first invention. See 35 U.S.C.A. § 102(e).

■ The evidence in this case supports the conclusion that Mott's mower is a commercial success and that it is capable of performing some kinds of mowing tasks better than any of the three older types of machines. While such facts do not of themselves meet the requirements of invention, they are indicia which support the likelihood that more than mechanical skill has been displayed by the plaintiffs. It has been said that in a close case such facts should, "tip the scales in favor of patentability." Goodyear Tire & Rubber Co., Inc. v. Ray-O-Vac Co., 321 U.S. 275, 279, 64 S.Ct. 593, 594, 88 L.Ed. 721 (1944).

■ The defendants have the burden of proving the invalidity of the patent (35 U.S.C.A. § 282) by clear and convincing proof. Jamco, Incorporated v. Carlson, 274 F.2d 338 (10th Cir. 1959). The starting point in assessing to what extent the invention claimed in the Mott patent may have been revealed by the disclosures of the prior art is 35 U.S.C.A.

§ 103, the rule of the "doorknob case," Hotchkiss v. Greenwood, 52 U.S. 248, 13 L.Ed. 683 (1850).

"*Conditions for patentability; non-obvious subject matter*

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * "

■ The plaintiffs have argued that their patent is for an invention that includes new elements, these being the blade with the critical angle of bend at the tip, and the "back-to-back" mounting of the blades; or in the alternative, that the machine is a patentable combination of known elements.

Claims 11, 12 and 13 describe the individual blades which the plaintiffs allege are not to be found in the prior art. The inventive feature claimed for the blades is the angle at which their cutting tips are bent. The plaintiffs have offered proof that if the tips are bent at an angle of more than about 65°, grass will hang up on them under certain mowing conditions and impair the operation of the machine. At angles of 65° or less, the centrifugal force at the blade tip is sufficient to overcome the resistance presented by the blade angle and all grass and clippings will be thrown from the blades. (Neither side offered evidence on how the speed of rotation or the length of the blade would effect the amount of centrifugal force generated at the blade tip. Such factors would seem to be of importance in determining what blade tip angle could be overcome.) The angle of the commercial blades used by Mott is 37°. The lesser the angle, the more blades have to be used in order to achieve overlapping of the swaths cut by the individual blades. The plaintiffs'

position is not that blades with an angle at their tip of more than 65° will fail to mow, but that such blades will not mow under all moisture conditions and hence could not be used on a successful commercial mower. The evidence is that when the grass is wet, or the weeds and grass have high internal moisture, the resistance to the centrifugal force is greater and the cuttings will not be thrown from blades which are bent more than about 65°. The principal reference relied upon by the Patent Office examiner in rejecting this claim initially was the British Herriot patent.

Figure 7 of Herriot shows a knife blade very similar to the Mott blade. The tip of the Herriot blade is bent at about 70° as measured to the shank of the blade. The examiner's rejection over Herriot was overcome by the making of a field demonstration. The record is not altogether clear as to just what transpired at the time of the demonstration. (Tr. 518–523). From what can be gathered, it appears that Carl Mott, Sr., did some mowing with a regular commercial Mott mower in the presence of two examiners from the Patent Office. The blades had an angle of 37°. After demonstrating the mower, one of the blades was bent, using a wrench and pliers, to an angle which Carl Mott, Sr., described as follows:

"* * * I couldn't swear as to what the angle was, but guessing at it, I tried to get in the nature of 65 degrees * * *." (Tr. 521).

The evidence is then to the effect that after further mowing, one of the examiners found grass hanging on the blade that had been bent. Following this demonstration, Claims 11, 12 and 13 were allowed.

Not many decisions have dealt with the problem of possible misrepresentations before the Patent Office. See United States v. Cold Metal Process Co., 164 F.2d 754 (6th Cir. 1947), cert. denied, 334 U.S. 811, 68 S.Ct. 1016, 92 L.Ed. 1742 (1948); United States v. Standard Electric Time Company, 155 F.Supp. 949

(D.Mass.1957). I believe that the evidence falls short of establishing that Carl Mott, Sr., deceived the Patent Office in any way. So far as the visual demonstration was concerned, the examiners made their own observations and drew their own conclusions from them. Whatever angle the one blade was bent to, whether 65° or something else, was a matter of judgment for the examiners, since apparently there was no actual measurement made. Although one might quarrel with the slipshod way in which the demonstration was conducted, it cannot be termed fraud.

The court is convinced, however, that Claims 11, 12 and 13 do not amount to invention. Whether or not a blade such as disclosed by Herriot might operate perfectly satisfactorily in all types of mowing conditions, the plaintiffs' tests, as pictured in Exhibits 16b–d, show that a blade with a 70° angle will mow effectively.

Although some grass is shown hanging on the 70° blades in Exhibit 16a, it is doubtful that the mowing action would be very much inhibited. It might also be noted that the moisture conditions reflected in Exhibit 16c were more severe than in Exhibit 16a, and yet, even the 90° blades were relatively free of clippings in Exhibit 16c.

The plaintiffs have challenged the Herriot reference as being in a nonanalogous art, it being a patent for a machine used to cut sugar cane and the like. The inventor in this case, Carl Mott, Sr., was a man of considerable experience in the field of agricultural implements, having been employed in the research department of International Harvester for many years. Herriot was not so far divorced from mowing machines as to be in a nonanalagous art, for the elements and purposes of the two devices should have had a similarity recognizable to a man as skilled as this inventor. Allied Wheel Products v. Rude, 206 F.2d 752 (6th Cir. 1953); Automatic Arc Welding Co. v. A. O. Smith Corporation, 60 F.2d 740 (7th Cir. 1932).

It is concluded that Claims 11, 12 and 13 of the Mott patent are invalid in that the blade described therein has no novelty over the blade disclosed in Figure 7 of the Herriot patent.

The other element of the Mott patent which is claimed by the plaintiffs to be new is the "back-to-back" mounting of the blades.

The theory of the "back-to-back" arrangement is that upon high speed rotation the centrifugal force on one blade of the pair tends to move that blade in a direction toward the other blade and vice versa. Hence, each blade of a pair pushes against the other so that each stabilizes and supports the other and prevents wavering or wandering during operation and upon striking solid objects. A stroboscopic demonstration was used to show the action of the blades as they struck a wooden stick that was too heavy to be severed. If only one blade of the pair struck the stick, it would pivot back; but because of the support of the other blade, it would not waver or oscillate.

The Campbell hammer-mill patent discloses blade types which are like the blade of Mott. Each half of the Campbell blade is not free to pivot independently of the other half of the blade, but the same force which produces stability in the pairs of blades in Mott would be present in the Campbell blades. I. e., due to the bent portion of the blade tip, the center of gravity of the blade is displaced from the plane of the shank of the blade, and as the blade is rotated a force is established which tends to move the blade tip in a direction opposite to its bend. If cut in two at the place marked by the letter "I" on Figures 3 and 4 of Campbell, the blades shown would be the "back-to-back" pairs claimed by Mott. If the blades shown in Figures 6, 7, 8 or 9 of Herriot were hung in pairs on the rotating shaft of Johnston or Bailey, a "back-to-back" effect would be achieved. The Goeldner patent, supra, which was not cited by the Patent Office, shows in Figure 15 a blade

mounting that is quite similar to what has been described as "back-to-back," although the pairs of blades are rigidly attached rather than being pivotally mounted.

My conclusion is that the "back-to-back" feature is good design; that it probably makes a smoother cutting and smoother running mower; and that it has in practice contributed to the overall ability of the Mott mower to operate safely in debris-littered areas; but that it is less than invention. In the light of the disclosures of the prior art, mounting the blades in "back-to-back" pairs would have been within the competence of a man skilled in the art of designing and creating agricultural implements.

A number of cases involving combination patents have been studied, beginning with the following admonition from Great A. & P. Tea Co. v. Supermarket Corp., 340 U.S. 147, 152–153, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950):

> "Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

In addition to the A. & P. case, supra, the following opinions have been of aid in deciding the validity of Mott as a combination patent: Cuno Corp. v. Auto-matic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58 (1941); O. M. I. Corporation of America v. Kelsh Instrument Co., 279 F.2d 579 (4th Cir. 1960); United States Air Conditioning Corp. v. Governair Corp., 216 F.2d 430 (10th Cir. 1954); Oliver United Filters v. Silver, 206 F.2d 658 (10th Cir. 1953), cert. denied, 346 U.S. 923, 74 S.Ct. 308, 98 L.Ed. 416 (1954); Tropic-Aire, Inc. v. Cullen-Thompson Co., 107 F.2d 671 (10th Cir. 1939).

Mott was definitely a new kind of mower. It was a novel development both in principle and operation. And while each of the individual mechanical elements of the Mott mower may be found somewhere in the prior art, taken as a whole, the mower represents a unique combination of those elements into a very useful machine. Even with the full benefit of hindsight, it cannot be said that the mower represents no more than skilled craftsmanship. At least no one else produced a mower like Mott prior to the time that machine came on the market, and the evidence is that the defendants had been working for a number of years in an effort to design a new type of mower. At this point it might be well to note that when the defendants did begin selling a hammer-knife type mower, it was a virtual "Chinese copy" of the Mott machine. This fact alone makes it difficult to accept the defendants' position that Mott's design lacks novelty and was obvious. I find that the Mott mower reflects a contribution to the state of the art, a uniqueness and a value that entitles it to the award of a patent. As was stated by Judge Phillips in Kobe, Inc. v. Dempsey Pump Co., 198 F.2d 416, 429 (10th Cir. 1952), cert. denied, 344 U.S. 837, 73 S.Ct. 46, 97 L. Ed. 651 (1952):

> "When the elements are so united that by their reciprocal influence upon each other, or by their joint action on a common objective, they perform additional functions and accomplish additional results, the union is a true combination."

The instant case is a classic example of how a patent may be used as the cornerstone on which the individual inventor can build a business. In 1949, Mott sold sixty-five of his mowers for $12,750. In the first half of 1959, he sold 2,555 mowers for about $555,000.

It is concluded that the Claims 6 through 10 are valid. Each of these claims is an adequate description of the essential elements of the combination, although they have varying phraseology. All of the claims, except No. 6, include the description of a maximum angle of 65° for the blade tip. Claims 9 and 10 do not refer to the helical mounting of the blades, which produces the overlapping swaths. Claim 8 refers to a "blade structure" furcating at its outer end, a term defined at column 4, lines 69–71 of the specifications. It does seem that the claims are unduly repetitious, and that Nos. 6, 8 and 9 are little more than surplusage.

As has been previously indicated, there can be no doubt but that the mowers, such as plaintiffs' Exhibit 71, were infringements. All of the evidence, taken together, also establishes that the infringement was deliberate. The dimensions of the Sunflower mower were so close to those of the Mott mower, that it must be held the Sunflower machine was a direct copy. It is also clear that Sunflower Industries was the alter ego of Owen Crump; that it was practically owned and controlled by him; and that he participated personally in a plan for the design and manufacture of a facsimile of the Mott mower for sale by Sunflower. I am convinced that the copying of the Mott mower was intentional, knowing and willful, and that the defendants should be held jointly and severally liable. Southwestern Tool Co. v. Hughes Tool Co., 98 F.2d 42 (10th Cir. 1938).

■■ The court has discretion pursuant to 35 U.S.C.A. § 284 to increase the damages up to three times, and also pursuant to 35 U.S.C.A. § 285 to award reasonable attorney fees. The award of attorney fees is to be made only in the exceptional case and upon a specific finding. Binks Mfg. Co. v. Ransburg Electro-Coating Corp., 281 F.2d 252 (7th Cir. 1960). Having found that the defendants deliberately and willfully copied one of plaintiffs' mowers, obtained by them for that specific purpose, it is held that the plaintiffs are entitled to an award of reasonable attorney fees. The patent owner who is put to the expense of enforcement against infringement of this character is entitled to such reimbursement.

■ Whatever award there might be for damages will not be multiplied. The basis for this is plaintiffs' Exhibit 54, which discloses that the sales of the Mott mower have been increasing at a steady rate since its introduction in 1949. There is no indication that sales of the Sunflower mowers had an adverse effect on Mott's business. Because of this, it is felt that multiplication of the award of damages would be unwarranted.

The defendants will be enjoined from further infringement. The court will, at a time to be set, hear further evidence as to the amount of damages and attorney fees to be awarded the plaintiffs.

Counsel for the plaintiffs will prepare and submit suggested findings of fact and conclusions of law pursuant to Rule XXI of the Rules of this court.